[Crim. No. 15631.   Second Dist., Div. One.   May 16, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES FRANKLIN JOHNSTONE, Defendant and Appellant.

40

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jimmie E. Tinsley, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—Defendant was accused of violating section 11530 of the Health and Safety Code (possession of marijuana). A physician was appointed to examine him as to his

sanity (Pen. Code, § 1368). The issue of his sanity was submitted to the court on the physician's report, and the court found that defendant was presently sane. In a jury trial, defendant was found guilty as charged. His petition for a writ of habeas corpus and his motion for a new trial were denied. Criminal proceedings were adjourned, and proceedings were instituted under section 3051 of the Welfare and Institutions Code (narcotics addiction). Defendant filed a notice of appeal from the order denying his motion for a new trial. Thereafter, defendant was returned to the court by reason of his having been convicted previously of robbery (Welf. & Inst. Code, § 3052), probation was denied, and he was sentenced to prison for the term prescribed by law. He filed a notice of appeal from the judgment and from the order denying his motion for a new trial.

Appellant contends that he was denied a trial on the issue of his present sanity; and that the 1968 amendment of section 11530 of the Health and Safety Code (permitting a county jail sentence for unlawful possession of marijuana),[1] which became effective after the sentence and during the pendency of this appeal, is applicable herein and the case should be remanded for resentencing.

On December 8, 1967, about 9 p.m., Officers Kelly and Jennings were in a police car on Sixth Street near its intersection with Spring Street in Los Angeles. They turned into an alley and Officer Jennings saw the defendant standing between the wall of a building and a Volkswagen automobile which was parked in the alley. Defendant was smoking a cigarette and was "bending down looking into" the Volkswagen. When the officers approached defendant, he looked at them, appeared to be startled, and "backed off." He put the cigarette, which had been in his right hand, into his left hand, "butted it" (i.e., broke off the burning portion and then threw that portion to the ground), and put the cigarette into his coat pocket. He then left the alley and walked toward Spring Street. Officer Kelly told defendant to stop, and defendant reached into his coat pocket, removed an object, and threw it to the ground. Officer Jennings picked up the object, which was a marijuana cigarette, and arrested the defendant.

Defendant testified in substance that before his arrest he was on his way with a friend to see a show at the Tower movie theatre on Broadway; he was walking with his friend;

[1] Appellant's brief, which was filed before the effective date of the amendment, refers to the proposed amendment as "Assembly Bill 172."

he was not smoking a cigarette, because he only had enough money for the show; the officers surrounded him, put his coat over his head, put his hands on the police car, and searched his clothing; they arrested him and threw him into the police car; they did not show him the cigarette when he was arrested; at the police station the officers tried to make a bargain with him about the marks on his arm; they said they would throw him into the hospital if he did not make a bargain; there were only two marks on his arm and the officers "made a big thing about it" and said he was a narcotic addict; he had the marks because he had been giving plasma; he told them he did not know what they were talking about; he smokes cigars, and does not smoke cigarettes; he did not have any marijuana cigarettes that night; he did not throw or drop a cigarette; he had never seen Exhibit 1 (marijuana cigarette) before; and he assumed that his friend "fled the scene."

Appellant contends that he was not given a trial on the issue of his present sanity. He argues that although the clerk's transcript (minute orders therein) shows that the issue of the defendant's present sanity was submitted on the report of the physician, the record does not show that defendant or his counsel stipulated that the issue of defendant's present sanity might be submitted on the report or that a trial on said issue was waived. The minute order of May 14, 1968, which shows that counsel for defendant was present, states that the cause was called for trial, the issue of defendant's present sanity was submitted on the report, and the court found that defendant was presently sane. (The order also shows that the report was filed with the court. It has not been included in the record on appeal.)

The reporter's transcript shows that when the case was called for trial (and in the presence of defendant) defendant's counsel stated in substance that he had read the physician's report which indicates that defendant was malingering, faking, and putting on an act; he (attorney) spoke to defendant for a lengthy period of time and was "unable to really communicate"; defendant refused to talk about details or to discuss the case other than to indicate that he wanted to give the officers a lie detector test, wanted to be released on his own recognizance, wanted "a 995," wanted his transcript, and wanted a jury trial; defendant's mother told him (attorney) that defendant had been in the hospital in 1965 and 1966 for "withdrawal"; whether defendant can cooperate with

counsel is doubtful to him (attorney) ; and it is possible that defendant was putting on an act.

The judge said in substance that the physician had been appointed pursuant to section 1368 of the Penal Code and had filed his report; the report stated that defendant was legally sane when the offense was committed and at the present time, that defendant is able to understand the nature and purpose of the proceedings against him and to cooperate with counsel, and that defendant had the mental capacity to form specific intent to commit the crime charged; and the court "declares that there is no doubt of the defendant's present sanity." The matter then proceeded to trial by jury without objection, request, or motion, relating to defendant's sanity; and no demand was made for further trial of the issue.

Section 1368 of the Penal Code provides in part that if at any time during the pendency of an action and prior to the judgment a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be determined by a trial by the court without a jury, or with a jury, if a trial by jury is demanded. ▆ "A defendant is sane, within the meaning of section 1368 of the Penal Code, if he is able to understand the nature and purpose of the proceedings taken against him and to conduct his own defense in a rational manner." (*People* v. *Pennington,* 66 Cal.2d 508, 515 [58 Cal.Rptr. 374, 426 P.2d 942].)

▆ In the present case, it appears that defendant waived a formal trial on the issue of sanity, and that the judge after reading the physician's report, found that there was "no doubt of defendant's present sanity." ▆ Appellant asserts, however, that in *People* v. *Pennington, supra,* p. 519, it was held that the judge, because he personally has no doubt as to the accused's sanity, may not deny a hearing under section 1368 of the Penal Code where there is substantial evidence of present insanity. (See *People* v. *Beivelman,* 70 Cal.2d 60, 71 [73 Cal.Rptr. 521, 447 P.2d 913].)

In the present case there was no substantial evidence of present insanity. At most, there were statements by defendant's counsel when the case was called for trial to the effect that he was unable to "really communicate" with defendant, that he had been told by defendant's mother that defendant had been in the hospital in 1965 and 1966 for "withdrawal," and that defendant would not cooperate in the preparation of defendant's case. Said statements by defendant's counsel were not evidence. Appellant asserts, however, that in *People*

v. *Laudermilk,* 67 Cal.2d 272, 286 [61 Cal.Rptr. 644, 431 P.2d 288], the court regarded similar statements as tantamount to sworn testimony. Even if the aforementioned statements of counsel herein were to be regarded as evidence of defendant's insanity, they were not substantial evidence thereof, especially in view of other portions of those statements to the effect that defendant told said counsel that he wanted a lie detector test, wanted to be released on his own recognizance, wanted "a 995," wanted his transcript, and wanted a jury trial. Thus, the statements by counsel, which are now asserted as evidence of defendant's insanity, in themselves show that defendant "was able to understand the nature and purpose of the proceedings taken against him and to conduct his own defense in a rational manner." Said statements by counsel also referred to the physician's report to the effect that defendant was malingering, faking, and putting on an act; and counsel himself said that defendant was possibly putting on an act. In addition to the aforementioned statements of counsel, appellant refers to a page of the reporter's transcript wherein defendant's counsel said that defendant had been "giggling and laughing inappropriately in court." (Cf. *People* v. *Beivelman, supra,* pp. 72-73.) In *Beivelman,* two psychiatrists testified regarding defendant's present sanity (one psychiatrist testified that defendant "may be suffering from a mental disorder" and that his examination of defendant had the atmosphere of a "cat and mouse" game in that defendant "tried to be manipulative during the examination to convince the examiner of his lack of sanity"; the other psychiatrist testified that defendant was a narcotics addict), and there were alleged "outbursts" by defendant during the trial. The court said (p. 73): "The evidence in this case being less than substantial, it was within the discretion of the trial court whether to order a sanity hearing, and in light of the record it cannot be said that there was an abuse of discretion." In the present case, the issue of defendant's present sanity was apparently submitted without objection for determination by the judge on the physician's report; the report was to the effect that defendant was legally sane, was "putting on an act," and was able to understand the nature and purpose of the proceedings against him and to cooperate with counsel; the asserted evidence of insanity consisted of statements of defendant's counsel which were less than substantial evidence of insanity; said statements included references to comments made by defendant regarding legal strategy which

showed that defendant understood the nature and purpose of the proceedings taken against him and that he was able to conduct his defense in a rational manner;[2] defendant's testimony showed that he understood the nature and purpose of the proceedings; and the judge found that there was no doubt that defendant was presently sane. The judge did not abuse his discretion in not ordering a further hearing as to defendant's alleged insanity.

Appellant further contends that the 1968 amendment to section 11530 (relative to punishment for unlawful possession of marijuana) is applicable herein even though the amendment had not become effective at the time the sentence was pronounced. Prior to the amendment, the section provided that the punishment for such offense was imprisonment in the state prison for not less than one year, nor more than ten years. The amendment provided that the punishment (when no prior narcotics offenses are shown) was imprisonment in the county jail for not more than one year, or in the state prison for not less than one year nor more than ten years. Appellant was sentenced on July 12, 1968. The amendment became effective on November 13, 1968. Appellant argues that since the judgment had not become final when the amendment became effective, the amendment (which provided for a county jail sentence) is applicable herein and that the case should be remanded for resentencing so that the trial judge might give consideration to the amendment.

Recently (on May 6, 1969) after the briefs herein were filed, the Supreme Court of California has decided a similar issue in the case of *People* v. *Francis*, 71 Cal.2d 66, 75 [75 Cal.Rptr. 199, 450 P.2d 591]. In that case where the appeal was pending when section 11530 was amended, it was held that said amendment applied to that case because judgment therein had not become final before the effective date of the amendment, and that the case should therefore be remanded to the trial court to consider the matter of probation and sentence. (See *People* v. *White* [also decided on May

---

[2] In addition to defendant's requests to his counsel concerning the case (e.g., that he wanted "a 995," etc.), he addressed the court on his motion for a new trial and said that his constitutional rights were not guaranteed at his preliminary examination and when he petitioned for the writ of habeas corpus. During the course of the trial, defendant asked for a continuance because he claimed he was inadequately represented by counsel in that counsel would not let him read the transcript of the preliminary examination. He said that he had a defense of "illegal search and seizure," and that he had raised such a defense in another case and had "beat it at a preliminary."

6, 1969] 71 Cal.2d 80 [75 Cal.Rptr. 208, 450 P.2d 600].) In the present case, prior to the effective date of the amendment, the defendant was sentenced to state prison for the term prescribed by law, and of course the judgment has not become final.

The judgment herein is reversed insofar as it commits defendant to imprisonment in the state prison, and it is otherwise affirmed. The case is remanded to the superior court for the sole purpose of resentencing defendant. The purported appeal from order denying motion for a new trial is dismissed.

Lillie, J., and Thompson, J., concurred.