Opinion
 

 ASHBY, J.
 

 Appellant was found to be a person described by Welfare and Institutions Code section 602 in that he committed batteiy (Pen. Code, § 242). He was ordered to remain a ward under section 602 and was committed to the Youth Authority.
 

 On February 19, 1976, appellant assaulted Craig Smith, a student of Crenshaw High School. Craig was walking to class when appellant belligerently blocked his way, called Craig a name, and told Craig to go around him. After Craig said, “Excuse me,” and walked out the other door, appellant attacked him from behind, striking him in the face,
 
 *354
 
 throwing him down to the ground, and kicking him in the throat twice while he was down.
 

 Appellant testified in his own defense, claiming that it was Craig who hit him first in the back of the neck. Appellant admitted then throwing Craig down and kicking him.
 

 Appellant’s contention that the evidence is insufficient to sustain the petition, because no witnesses were called to corroborate the victim, is without merit. The usual rules for reviewing the sufficiency of evidence in criminal cases apply to juvenile court cases arising under Welfare and Institutions Code section 602.
 
 (In re Roderick P.,
 
 7 Cal.3d 801, 809 [103 Cal.Rptr. 425, 500 P.2d 1].) It was for the trier of fact to determine whether to believe the victim or appellant, and there is no requirement that the victim’s testimony be corroborated by other evidence.
 
 (People
 
 v.
 
 Chavez,
 
 268 Cal.App.2d 381, 383-384 [73 Cal.Rptr. 865];
 
 People
 
 v.
 
 Sanders,
 
 206 Cal.App.2d 479, 482 [23 Cal.Rptr. 725];
 
 People
 
 v.
 
 Ozene,
 
 27 Cal.App.3d 905, 910 [104 Cal.Rptr. 170];
 
 People
 
 v.
 
 Jones,
 
 10 Cal.App.3d 237, 247 [88 Cal.Rptr. 871].)
 

 After the adjudication, appellant’s trial counsel requested that the court appoint á doctor pursuant to Evidence Code sections 730, 952 and 1017, to prepare a
 
 confidential
 
 report for counsel to “help me in preparing [for the disposition hearing], both in talking with the youngster and exploring possible alternative avenues here.” The trial court ruled no showing had been made why the defense needed a confidential psychiatric report for purposes of the disposition hearing.
 
 [1]
 
 Appellant’s counsel reiterated that he would like such a report, so the court appointed Dr. Drucker to render a report to the court, not on a confidential basis, pursuant to Evidence Code section 730. Dr. Drucker testified at the hearing.
 

 Appellant’s contention that the court erred in failing to provide the appointment on a confidential basis is without merit. Counsel made no showing whatsoever why a confidential expert was essential to assist counsel “in talking with the youngster and exploring possible alternative avenues here.” The mere claim that a wealthy minor could have retained one privately is no substitute for a showing of necessity. The trial court’s exercise of discretion will be upheld where, as here, appellant fails to
 
 *355
 
 show that a confidential report was essential. (See
 
 People
 
 v.
 
 Vatelli,
 
 15 Cal.App.3d 54, 61 [92 Cal.Rptr. 763];
 
 Torres
 
 v.
 
 Municipal Court, 50
 
 Cal.App.3d 778, 785 [123 Cal.Rptr. 553].)
 

 Appellant’s next contention is that the court abused its discretion in committing appellant to the Youth Authority. The decision of the juvenile court to commit a minor to the California Youth Authority is within the court’s discretion and subject to review on appeal only for abuse of discretion if there is no substantial evidence to support it.
 
 (In re Clarence B.,
 
 37 Cal.App.3d 676, 682-683 [112 Cal.Rptr. 474];
 
 In re Willy L.,
 
 56 Cal.App.3d 256, 265 [128 Cal.Rptr. 592];
 
 In re Dale S.,
 
 10 Cal.App.3d 952, 957 [89 Cal.Rptr. 499].) We have augmented the record to include the juvenile court file which was before the court when it committed appellant to the Youth Authority. The record amply supports the trial court’s determination. In addition to the instant offense, three prior petitions under Welfare and Institutions Code section 602 had been sustained against appellant. Each of appellant’s offenses has involved firearms or violent or threatening behavior. In addition to the instant assault, they include possession of a concealable firearm (Pen. Code, § 12021.5); maliciously and wilfully discharging a firearm at an inhabited building (Pen. Code, § 246); and preventing a witness from attending a trial by means of force or threats of unlawful injury (Pen. Code, § 136, subd. (b).) For the violation of Penal Code section 246 appellant was committed for camp community placement. According to the probation report, appellant’s adjustment at camp was veiy poor and he was involved in at least one gang incident. The present offense was committed shortly after appellant’s return to the community from camp. Moreover, it was disclosed that the victim of the present assault had been a potential witness in one of appellant’s prior cases. The probation officer’s recommendation was that appellant needed long-term placement in a firmly structured setting and that the community needs to be protected from his hostile behavior. He felt suitable placement or camp community placement would not be appropriate. Dr. Drucker agreed. So did the court, and its opinion is amply supported by the record. (See also
 
 In re Zardies B.,
 
 64 Cal.App.3d 11, 14-15 [134 Cal.Rptr. 181];
 
 In re Norman H„
 
 64 Cal.App.3d 997, 1004 [136 Cal.Rptr. 145].)
 

 At one point in the colloquy between the court and defense counsel concerning the value of the psychiatric testimony, the court commented: “. . . and in Sammy’s case there’s no indication that your client is mentally ill, that there’s anything wrong with him. As a matter of fact, everything indicates in here that he’s perfectly intellectually and
 
 *356
 
 emotionally quote ‘normal’ young man.” Contrary to appellant’s assertion, this was not an indication by the court casting doubt on its finding that the welfare of the minor and of the community required commitment to the Youth Authority. It was merely a comment that the psychiatric examination did not indicate a specific mental illness. This in no way detracts from the seriousness of appellant’s record and the dangerousness in his behavior.
 
 [2]
 

 Finally, appellant complains that his commitment to the Youth Authority could result in a longer period of confinement than could be imposed on an adult who violated Penal Code section 242, which is punishable by imprisonment for six months.
 
 [3]
 
 However,
 
 People
 
 v.
 
 Olivas,
 
 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375], on which appellant relies, is not controlling. That decision was expressly limited to an adult who was committed to the Youth Authority after conviction in adult court, and did not decide whether the same reasoning would apply to a juvenile committed to the Youth Authority after the sustaining of a petition in juvenile court pursuant to Welfare, and Institutions Code section 602.
 
 (Id.,
 
 at p. 243, fn. 11.)
 

 However, this issue is controlled by the 1976 amendments to Welfare and Institutions Code sections 726 and 731, to the benefit of which appellant is entitled because his judgment was not final prior to their effective date of January 1, 1977.
 
 (In re Aaron N.,
 
 70 Cal.App.3d 931, 938 [139 Cal.Rptr. 258]; Stats. 1976, ch. 1071, §§ 29, 30, pp. 4827, 4829.) Those amendments provide that a minor adjudged a ward of the court under section 602 and committed to the Youth Authority may not be held in physical confinement for a period in excess of the maximum term of imprisonment which would be imposed upon an adult convicted of the offense which brought the minor under the jurisdiction of the juvenile court.
 

 Appellant’s violation of Penal Code section 242 was only the last in a series of offenses for which appellant had already been declared a ward of the court under section 602. If appellant’s prior, more serious offenses
 
 *357
 
 of wilfully and maliciously shooting at an inhabited dwelling and of threatening a witness may be taken into account, the maximum period of physical confinement under the amended statutes would not be limited to the six-month period of imprisonment for assault.
 
 Aaron
 
 N. holds that, “where, as here, the minor violates several provisions of criminal law by his repeated misconduct for which he is declared a section 602 ward of the court, each and every criminal violation may constitute the offense which brings him under the jurisdiction of the juvenile court and may serve as a measurement for his physical confinement under the broad language of sections 726 and 731 without violating the basic precept of equal treatment of the adult and juvenile offenders.”
 
 (In re Aaron
 
 N., supra, 70 Cal.App.3d at pp. 939-940; fn. omitted.)
 

 Under the 1976 amendments, effective January 1, 1977; under juvenile court rules (Cal. Rules of Court, rule 1373), effective July 1, 1977; and under
 
 Aaron
 
 N,
 
 supra,
 
 at page 941, decided June 22, 1977, it is incumbent upon the trial court to specify at the time of the disposition whether the commitment to the Youth Authority is based upon prior offenses.
 
 [4]
 
 Trial courts making disposition orders after these dates are
 
 *358
 
 presumably aware of their obligations and will make the record clear as to their intent.
 

 A problem arises in cases such as
 
 Aaron N'.
 
 and this one, where the disposition order was made prior to the effective date of the amended
 
 *359
 
 statutes but where the minor is entitled to the benefit, if any, of the amendments because the judgment had not yet become final when the amendments went into effect. The record in such cases may leave unclear what the trial court intended or would have done had it operated under the new law. The court in
 
 Aaron N.
 
 handled this problem by stating: “Although the foregoing reasons impel the deduction that in an appropriate case the entire record of the juvenile may be taken into account, and that the maximum length of physical confinement under sections 726 and 731 may be measured by the most serious criminal offense of which the minor has been found guilty, the record before us does not indicate that this is such a case, [¶] While there is some indication that the court
 
 considered
 
 appellant’s whole background in committing him to the Youth Authority, there simply is no statement by the court that the actual commitment was based thereon or that the maximum term should be governed by the prior felonies of arson and/or burglary. Additionally, the commitment order issued on December 10, 1975, is clear and unmistakable that appellant’s Youth Authority commitment was based solely on the misdemeanors of trespass (Pen. Code, § 602, subd. (j)) and attempted petty theft (Pen. Code, §§ 488, 664).”
 
 (In re Aaron N., supra,
 
 70 Cal.App.3d at pp. 940-941; italics in original; fn. omitted.) The court concluded that under such circumstances the maximum period of confinement was governed solely by the latter offenses which carried a six-month maximum.
 

 The instant case is distinguishable from
 
 Aaron N.
 
 in that the record makes clear
 
 that the
 
 trial court did not
 
 intend
 
 appellant’s confinement in the Youth Authority to be limited to six months. The probation officer recommended, “Samuel appears to need a
 
 dong term placement in a firmly structured setting
 
 where he can learn self-control and the ability to adapt to others successfully. Also, he needs to learn a trade. Perhaps most of all, the community needs to be protected from his hostile behavior.” (Italics added.)
 

 The trial court agreed that appellant posed a danger to the community and expressed the “hope that there will be some benefit through age, maturation, education and counseling of the California Youth Authority that will change what I consider to be an extremely dangerous young man.”
 
 [5]
 

 
 *360
 
 The record makes clear that the trial court did not intend appellant’s confinement to be only six months and would not have specified a mere six-month maximum period of confinement had the court been operating under the 1976 amendments. For us to modify the judgment on appeal to provide a six-month maximum period of confinement would be manifestly contrary to the trial court’s intent on this record. The proper procedure in these circumstances is to remand the matter to the trial court for the court to specify the maximum period of confinement under appropriate statutory standards and rules of court. (See
 
 In re Corcoran,
 
 64 Cal.2d 447, 449-450 [50 Cal.Rptr. 529, 413 P.2d 129];
 
 In re Ring,
 
 64 Cal.2d 450, 451-452 [50 Cal.Rptr. 530, 413 P.2d 130];
 
 People
 
 v.
 
 Francis,
 
 71 Cal.2d 66, 75-79 [75 Cal.Rptr. 199, 450 P.2d 291]. See also
 
 People
 
 v.
 
 Johnstone,
 
 273 Cal.App.2d 39, 45 [77 Cal.Rptr. 867];
 
 People
 
 v.
 
 Scrivens,
 
 276 Cal.App.2d 429, 435 [81 Cal.Rptr. 86];
 
 People
 
 v.
 
 Sproul,
 
 3 Cal.App.3d 154, 165 [83 Cal.Rptr. 55];
 
 People
 
 v.
 
 Colbert,
 
 6 Cal.App.3d 79, 85 [85 Cal.Rptr. 617].)
 

 The order of commitment to the Youth Authority is reversed and the cause remanded to the trial court for further proceedings consistent with the views expressed in this opinion. In all other respects the judgment is affirmed.
 

 Kaus, P. J., and Hastings, J., concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied January 19, 1978. Mosk, J., and Newman, J., were of the opinion that the petition should be granted.
 

 [1]
 

 “THE COURT: Well, for purposes of disposition, it is not a confidential matter, as far as I am concerned. And
 
 I
 
 am not really sure that you need one at all, under the circumstances.”
 

 [2]
 

 AppeIlant also cites, as indicative of bias, a statement by the court at the end of the adjudication hearing to the effect that “it is all over for [appellant].” However, this comment was directed to the district attorney’s request that the minor be detained pending the disposition hearing.
 

 [3]
 

 Appellant was approximately 17 years old when committed to the Youth Authority, and under Welfare and Institutions Code section 1769 the commitment could continue up to age 21, or longer under Welfare and Institutions Code section 1800 et seq.
 

 [4]
 

 Statutes 1977, chapter 1238 (Assem, Bill No. 1756), filed October 1, 1977, and effective immediately as an urgency statute, clarifies the method by which the court is to calculate the maximum period of confinement. It provides: “SECTION 1. Section 726 of the Welfare and Institutions Code is amended to read: 726. In all cases wherein a minor is adjudged a ward or dependent child of the court, the court may limit the control to be exercised over such ward or dependent child by any parent or guardian and shall by its order clearly and specifically set forth all such limitations, but no ward or dependent child shall be taken from the physical custody of a parent or guardian unless upon the hearing the court finds one of the following facts: (a) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor, (b) That the minor has been tried on probation in such custody and has failed to reform, (c) That the welfare of the minor requires that his custody be taken from his parent or guardian. “In any case in which the minor is removed from the physical custody of his parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in'physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. “As used in this section and in Section 731, ‘maximum term of imprisonment’ means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled. “If the court elects to aggregate the period of physical confinement on multiple counts, or multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602, the ‘maximum term of imprisonment’ shall be specified in
 
 *358
 
 accordance with subdivision (a) of Section 1170.1 of the Penal Code. “If the charged offense is a misdemeanor or a felony not included within the scope of Section 1170 of the Penal Code, the ‘maximum term of imprisonment’ is the longest term of imprisonment prescribed by law. “ ‘Physical confinement’ means placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home pursuant to Section 730, or in any institution operated by the Youth Authority. “Nothing in this section shall be construed to limit the power of the court to retain jurisdiction over a minor and to make appropriate orders pursuant to Section 727 for the period permitted by Section 607. “SEC. 2. Section 731 of the Welfare and Institutions Code is amended to read: 731. When a minor is adjudged a ward of the court on the ground that he is a person described by Section 602, the court may order any of the types of treatment referred to in Sections 727 and 730, and, in addition may order the ward to make restitution or to participate in uncompensated work programs or may commit the ward to a shelter-care facility or may order that the ward and his family or guardian participate in a program of professional counseling as arranged and directed by the probation officer as a condition of continued custody of such minor
 
 or may commit the minor
 
 to the Youth Authority. “A minor committed to the Youth Authority may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought" or continued the minor under the jurisdiction of the juvenile court. Nothing in this section limits the power of the Youth Authority to retain the minor on parole status for the period permitted by Section 1769. “SEC. 3. Section 1766 of the Welfare and Institutions Code is amended to read: 1766. When a person has been committed to the Authority, it may (a) Permit him his liberty under supervision and upon such conditions as it believes best designed, for the protection of the public; (b) Order his confinement under such conditions as it believes best designed for the protection of the public, except that a person committed to the Youth Authority pursuant to Sections 731 or 1731.5 may not be held in physical confinement for a total period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought the minor under the jurisdiction of the juvenile court, or which resulted in the commitment of the young adult to the Youth Authority. Nothing in this subdivision limits the power of the Authority to retain the minor or the young adult on parole status for the period permitted by Sections 1769, 1770, and 1771; (c) Order reconfinement or renewed release under supervision as often as conditions indicate to. be desirable; (d) Revoke or modify any order except an order of discharge as often as conditions indicate to be desirable; (e) Modify an order "of discharge if conditions indicate that such modification is desirable and when .such modification is to the benefit of the- person committed to the Authority; (f) Discharge him from its control when it is satisfied that such discharge is consistent with the protection of the public. “SEC. 4. This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The. facts constituting such necessity are: In order to clarify changes made in the extensive revision of the juvenile court law enacted at the 1975-1976 .Regular Session of the Legislature, it is imperative that this act shall take effect immediately.”
 

 [5]
 

 At the disposition hearing the court stated: “. . . The Court only considered the fact that Sammy has had a couple of arrests for shooting, or possession of a firearm; that he threatened or intimidated the victim on the last case that he was sent to camp for; and this time beat up the boy who was a potential witness on that incident. He’s been through
 
 *360
 
 suitable placement; and he has been through camp. The Court feels that this minor is an absolute danger to the community. I hope, I’m not encouraged, but I hope that there will be some benefit through age, maturation, education and counseling of the California Youth Authority that will change what I consider to be an extremely dangerous young man.... [¶] Under Section 726 of the Welfare and Institutions Code, the Court finds that the welfare of the minor requires that his custody be taken from his parent and guardian. Minor having been made a ward of the Court under Section 602, remains such. The camp community placement will be terminated. Custody of the minor will be taken from the parents. The minor will be committed to the California Youth Authority.'...”