[Civ. No. 17854. Third Dist. Apr. 25, 1979.]

In re ROBERT S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ROBERT S., Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ezra Hendon, Chief Assistant State Public Defender, Richard E. Shapiro and Manuel M. Medeiros, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and John R. Duree, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PUGLIA, P. J.**—Robert S. appeals from a dispositional order of the juvenile court continuing his status as a ward (Welf. & Inst. Code, §§ 602, 725)[1] and committing him to the California Youth Authority (CYA). On appeal the minor's principal contention is that the court improperly considered previously sustained section 602 petitions in setting the maximum permissible term of physical confinement under the CYA commitment.

Robert was a ward of the court pursuant to section 602 at the time the underlying petition was filed. That petition therefore seeks to continue Robert's wardship; it alleges two counts of tampering with a vehicle (Veh. Code, § 10852). Violation of Vehicle Code section 10852 is a misdemeanor. At the jurisdictional hearing the juvenile court sustained the petition, finding that Robert had committed both charged offenses.

A probation officer's report, prepared a week before the jurisdictional hearing, contained a list of prior juvenile petitions filed against Robert; latest among them was a petition alleging commission of four counts of burglary (Pen. Code, § 459) and four counts of receiving stolen property (Pen. Code, § 496). Apparently, the petition had been sustained as to two allegations of receiving stolen property.

At the close of the instant jurisdictional hearing, the court noted that Robert continued to commit crimes, expressing dismay that he had been in juvenile court on the burglary and receiving stolen property petition only a few months earlier.

At the dispositional hearing the judge again commented on Robert's lengthy record of juvenile offenses and questioned him about the conduct which had led to the petition alleging burglary and receiving stolen property. The court found that because Robert continued his criminal activities, the structured environment of CYA would be beneficial to him. Robert was committed to the CYA. Although at the dispositional hearing the court did not specifically so order, the commitment sets forth two previous findings that the minor committed the crime of receiving stolen property. The maximum permissible term of physical confinement fixed therein is substantially based on these previous findings. The CYA commitment fixes a "term" of three years and of eight months respective-

---

[1] All statutory references herein are to the Welfare and Institutions Code unless otherwise indicated.

ly on the two previous findings of receiving stolen property and of six months for each of the two counts of vehicle tampering, and further provides that the "two prior convictions" of violation of Penal Code section 496 "are to run consecutively to" the two counts of violation of Vehicle Code section 10852. (The court apparently intended the two receiving stolen property terms also to run consecutively to each other. (See fn. 2, *post*, p. 361.)) The commitment order specifies that Robert is not to be confined past his twenty-first birthday, which will occur less than three years from the date of his commitment.

## I.

Robert complains that the juvenile court was without jurisdiction to consider the receiving stolen property findings for purposes of fixing his maximum period of physical confinement; he contends that section 726 as amended does not authorize the juvenile court to consider previously sustained 602 petitions for that purpose.

Section 726 provides in relevant part: "In any case in which the minor is removed from the physical custody of his parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses *which brought or continued the minor under the jurisdiction of the juvenile court.*

"As used in this section and in Section 731, 'maximum term of imprisonment' means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code. . . .

"If the court elects to aggregate the period of physical confinement on multiple counts, or multiple petitions, *including previously sustained petitions adjudging the minor a ward within Section 602,* the 'maximum term of imprisonment' shall be specified in accordance with subdivision (a) of Section 1170.1 of the Penal Code.

"If the *charged offense* is a misdemeanor or a felony not included within the scope of Section 1170 of the Penal Code, the 'maximum term of imprisonment' is the longest term of imprisonment prescribed by law. . . ." (Italics added.)

In *In re Aaron N.* (1977) 70 Cal.App.3d 931 [139 Cal.Rptr. 258], the minor had a long history of serious criminal conduct on the basis of which petitions had previously been sustained adjudging him a ward under section 602. In the most recent proceeding he admitted two misdemeanor offenses, exposing him to a six-month maximum period of confinement had he been an adult. The Court of Appeal expressed the opinion that where "the minor violates several provisions of criminal law by his repeated misconduct for which he is declared a section 602 ward of the court, each and every criminal violation may constitute the offense which brings him under the jurisdiction of the juvenile court and may serve as a measurement for his physical confinement under the broad language of sections 726 and 731 without violating the basic precept of equal treatment of the adult and juvenile offenders." (Fn. omitted; 70 Cal.App.3d at pp. 939-940; see also *In re Samuel C.* (1977) 74 Cal.App.3d 351, 357 [141 Cal.Rptr. 431].) Thus, based on previously sustained section 602 petitions, the minor was potentially subject to physical confinement for a substantially longer period than could be justified by the two misdemeanors which he had admitted in proceedings on the most recent petition.

At the time *Aaron N.* was decided, section 726 did not define the phrase "maximum term of imprisonment." It merely provided that any order removing a minor from the physical custody of his parent or guardian pursuant to section 602 "shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense which brought the minor under the jurisdiction of the juvenile court." (Stats. 1976, ch. 1071, § 29, p. 4827.)

The minor maintains the amendment to section 726 defining the phrase "maximum term of imprisonment" (Stats. 1977, ch. 1238, § 1, eff. Oct. 1, 1977) nullifies the interpretation accorded section 726 by *In re Aaron N., supra.* We disagree. We believe the section as amended contemplates that previously sustained section 602 petitions may constitute "the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court" and that the maximum term of physical confinement may therefore be determined with reference to such previously sustained petitions.

The language added by the 1977 amendment specifies how the maximum term of imprisonment is to be determined in three situations: (1) Where the offense or offenses involved are covered by the determinate

sentence law (DSL), (2) where they are outside the scope of the DSL, and (3) where there are multiple offenses involved which the court elects to aggregate. In any of the foregoing situations, however, the offense or offenses involved, whether covered by the DSL or not, or whether aggregated or not, are those "which brought or continued the minor under the jurisdiction of the juvenile court." And the quoted clause from section 726 clearly was meant to include offenses which were the subject of previously sustained section 602 petitions.

Indeed, where multiple counts or petitions are aggregated, the amendment to section 726 expressly recognizes that the maximum term of confinement may be fixed by reference to "previously sustained [section 602] petitions" and "in accordance with subdivision (a) of Section 1170.1 of the Penal Code." [2]

Robert argues that his case is governed by the fifth paragraph of section 726, which provides, "If the charged offense is a misdemeanor or a felony not included within the scope of [Penal Code section 1170], the 'maximum term of imprisonment' is the longest term of imprisonment prescribed by law." Thus, he urges, the longest term for which he may be committed to CYA is one year, since the longest term prescribed by law for a single violation of Vehicle Code section 10852 is six months. (Veh. Code, § 40000.9; Pen. Code, § 19.)

Read in isolation, paragraph five of section 726 appears to support Robert's interpretation. ■ But we are required to construe statutes as a whole, giving full effect to every word and clause, wherever possible. (See *Woodmansee* v. *Lowery* (1959) 167 Cal.App.2d 645, 650 [334 P.2d 991]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Thus we must consider paragraph five in the context of

---

[2] Penal Code section 1170.1, subdivision (a), provides that when consecutive sentences are imposed for multiple felonies, the aggregate term of imprisonment shall equal "the sum of the principal term, the subordinate term and any additional term imposed. . . ." The principal term is to consist of the greatest term imposed by the court for any of the crimes; the subordinate term is to consist of one-third the middle term prescribed by statute as the penalty for each of the other felonies for which consecutive sentences are being imposed.

Penal Code section 496 is an alternatively punishable felony-misdemeanor, punishable by either a one-year maximum county jail sentence, or by sixteen months, two years, or three years in state prison. (Pen. Code, § 18.) Robert's prior juvenile record indicates the receiving stolen property offenses were treated as felonies in his case. Thus the commitment order shows the juvenile court imposed the maximum three-year term on one count of receiving stolen property, apparently as the "principal term," and eight months (one-third of twenty-four months, the middle term) apparently as the subordinate term on the other count of receiving stolen property.

the entire section of which it is a part. When we do so it is apparent that paragraph five was simply intended to fill the gap created by paragraph three of section 726, which defines "maximum term of imprisonment" only in terms of the penalties specified for those felony crimes which fall within Penal Code section 1170, subdivision (a)(2); the fifth paragraph of section 726 applies to situations where the duration of physical confinement is wholly or partly based on a crime or crimes other than those within the scope of Penal Code section 1170, subdivision (a)(2). The phrase "charged offense" described in paragraph five as "a misdemeanor or a felony not included within the scope of Section 1170 of the Penal Code" refers to "the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." And as we have pointed out, such offense or offenses may include those the subject of previously sustained section 602 petitions.

## II.

■ Robert also contends that even if the juvenile court could properly take his prior record into account in determining the maximum term for which he could be detained by the Youth Authority, his due process rights were violated because the court did not inform him of its intention to do so. This contention has merit.

In *Aaron N., supra,* the minor appealed on the basis that he was subject to a term of confinement potentially longer than any which could have been imposed upon an adult convicted of the two misdemeanors which he had admitted. Observing that juvenile proceedings are quasi-criminal in nature, thus requiring obeisance to fundamental notions of fairness and due process, the Court of Appeal held that if the maximum term of confinement is to be fixed on the basis of some prior criminal act for which a petition has been sustained, "the court must advise the minor of its intention to do so and afford the minor an opportunity to be heard prior to the commitment." (70 Cal.App.3d at pp. 939-941.)

Respondent argues that although Robert was not formally apprised by the juvenile court of its intention to base any part of its commitment order on his earlier petitions, he was put on notice by the court's adversion to his most recent prior offenses at the conclusion of the jurisdictional hearing. However, we agree with the *Aaron N.* court that due process requires something more. Robert was not given a meaningful opportunity to be heard regarding resort to past sustained petitions to increase the maximum permissible period of confinement. (*In re Aaron N., supra,* 70 Cal.App.3d at p. 941.)

Unlike the situation in *Aaron N.,* it is manifest on the face of the commitment order that the court here intended the duration of maximum physical confinement to be measured not by the current misdemeanors alone but also by the minor's most serious adjudicated offenses. Accordingly, we shall not modify the commitment; rather we shall remand the matter to the trial court for redetermination of the maximum permissible term of physical confinement by means of procedures which give fair notice to the minor and an opportunity to be heard. (See *In re Samuel C., supra,* 74 Cal.App.3d at pp. 359-360.)

### III.

The minor's final contention is that the two six-month terms fixed for the Vehicle Code section 10852 violations must be deemed to run concurrently due to the juvenile court's failure to specify that they run consecutively. He urges that such a conclusion is required because Penal Code section 669 so provides for "person[s] . . . convicted of two or more crimes" and "sentenced" to multiple "terms of imprisonment."

■ Since "A declaration of wardship is not a 'conviction' and a dispositional order of the juvenile court is not a 'sentence' " (*In re Leonard R.* (1977) 76 Cal.App.3d 100, 104 [142 Cal.Rptr. 632]), by its terms Penal Code section 669 is not applicable to juvenile proceedings. Nonetheless, we are left with a commitment order ambiguous on its face with respect to whether the two six-month terms for vehicle tampering are to run consecutively or concurrently. In whose favor should the doubt be resolved?

Although juvenile proceedings have traditionally been characterized as "civil" rather than "criminal" in nature, within the recent past a number of concepts from the criminal arena have been incorporated into juvenile proceedings, in recognition of their quasi-criminal nature. (See e.g. *In re Gault* (1967) 387 U.S. 1, 41 [18 L.Ed.2d 527, 554, 87 S.Ct. 1428]; *In re Winship* (1970) 397 U.S. 358, 369 [25 L.Ed.2d 368, 378, 90 S.Ct. 1068]; *In re Arthur N.* (1976) 16 Cal.3d 226, 240 [127 Cal.Rptr. 641, 545 P.2d 1345]; *People* v. *Olivas* (1976) 17 Cal.3d 236, 251-257 [131 Cal.Rptr. 55, 551 P.2d 375].)

Penal Code section 669 gives the trial judge in criminal proceedings discretion to determine whether a convicted multiple offender's offenses are sufficiently serious to warrant the imposition of consecutive (aggregated) terms of imprisonment, or whether the purposes of incarceration will

be adequately served by the imposition of only a single term to which all other terms run concurrently. (Cf., *People* v. *Bradford* (1976) 17 Cal.3d 8, 20 [130 Cal.Rptr. 129, 549 P.2d 1225].) When the judgment fails to specify whether multiple sentences are to run concurrently or consecutively, the doubt is resolved in favor of the accused. (Pen. Code, § 669; see *People* v. *Ralph* (1944) 24 Cal.2d 575, 581 [150 P.2d 401]; *Bell* v. *United States* (1955) 349 U.S. 81, 83 [99 L.Ed. 905, 910, 75 S.Ct. 620].)

Section 602 wardship proceedings are quasi-criminal in nature. Therefore any doubt as to whether the court, in fixing the maximum permissible period of confinement, intended the terms for multiple offenses to run consecutively or concurrently must be resolved in favor of the minor. Neither the oral proceedings, the minute order nor the order of commitment to CYA make clear whether the juvenile court intended to impose consecutive or concurrent terms of potential confinement for the Vehicle Code section 10852 violations. Resolving the doubt in Robert's favor, we hold that in computing the maximum period of confinement, the two six-month terms are to run concurrently.

## IV.

The order of commitment to CYA is affirmed. The matter is remanded to the trial court for the sole purpose of determining in the light of the minor's current circumstances whether, and if so .to what extent, the maximum term of physical confinement is to be measured by reference to previously sustained petitions adjudging the minor a person within section 602 for commission of acts in violation of Penal Code section 496. Such determination is to be made upon notice with the opportunity to the minor to be heard thereon. In the event the court on remand determines to fix the maximum term of physical confinement without reference to previously sustained petitions and if, as appears, the minor has been confined for a period of six months or more, he is entitled to his immediate release from physical confinement under the instant order of commitment to CYA.

Regan, J., and Reynoso, J., concurred.