[No. A032471. First Dist., Div. One. May 13, 1987.]

In re GWENETTE D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
GWENETTE D., Defendant and Appellant.

1248

---

**COUNSEL**

Catalina Lozano, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Thomas A. Brady and Mary Roth, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RACANELLI, P. J.—Appellant, Gwenette D., was a 17-year-old minor at the time she admitted the allegations of a petition filed under Welfare and Institutions Code section 602.[1] She appeals from the juvenile court's order committing her to a locked facility. Prior to filing of her opening brief on appeal, she became 18 years old.

## Factual and Procedural Background

On July 12, 1985, Gwenette and five other juveniles entered a sportswear store, locked the front door, pulled the telephone from the wall and removed a number of warm-up suits from the racks. The single sales clerk in the store was frightened by their actions and screamed for help. A witness attempted to stop the juveniles as they escaped in a stolen automobile, but was knocked to the ground by the car. The group was finally detained at a bridge toll plaza and Gwenette and another of the female juveniles were apprehended fleeing from the car. The abandoned car contained the stolen garments as well as other stolen items.

On July 16, 1985, a petition was filed under section 602 alleging a violation of Penal Code section 459 (burglary). It was subsequently amended to refer to Penal Code section 490.5 (petty theft from a merchant).

Gwenette had been a ward of the court on three previous occasions, all connected with shoplifting. She had been returned to the custody of her mother on the first two occasions, but in June 1984, her mother requested that an out-of-home placement be made due to her inability to control Gwenette. Gwenette was placed in a group home, but she ran away after approximately one month. After another shoplifting incident, she was subsequently returned to her mother. She failed to comply with the conditions imposed by the court. At some point, her mother sent her to live with an aunt in Ukiah. Gwenette, however, returned to the Bay Area within a few days.

Prior to the dispositional hearing in the most recent matter, Gwenette's probation officer submitted a report to the court stating that the case had been evaluated by a screening committee and that the unanimous recommendation was for placement in the Contra Costa County Girl's Center, a locked facility. Gwenette's mother concurred in this recommendation. A social worker submitted a report which recommended commitment to an "open setting" such as a group home. Gwenette expressed her desire for placement in a group home.

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise noted.

At the dispositional hearing held on August 9, 1985, the court noted that Gwenette's shoplifting had escalated with this most recent incident, as it was possible someone could have been hurt. The court stated that Gwenette had done poorly in less structured placements and had left the group home. After considering both reports and hearing counsel's equal protection argument, the court ordered Gwenette to be committed to the locked facility at Contra Costa Girl's Center for a period not to exceed one year. This was subsequently modified to 140 days.

A petition for writ of habeas corpus, filed August 30, 1985, asserted that it was a violation of Gwenette's right to equal protection for the county to fail to provide an unlocked ranch or camp facility for girls such as the Log Cabin Ranch provided for boys. The petition was summarily denied on September 12, 1985. A notice of appeal from the dispositional judgment was filed August 14, 1985.

## Issue of Mootness

The record on appeal discloses that the wardship petition was dismissed in August 1986 due to the occurrence of Gwenette's 18th birthday. ▉ The Attorney General argues that the appeal should be dismissed as moot, as a reversal now would be without effect. As Gwenette has raised no challenge to the finding that she committed a criminal act, we would be inclined to agree with this argument. (*In re Katherine R.* (1970) 6 Cal.App.3d 354 [86 Cal.Rptr. 281] [challenge to severity of probationary terms moot when minor became emancipated].) Gwenette has, however, raised an issue involving her constitutional rights. Were the argument persuasive, this appeal would concern a question of continuing public interest, which would indicate a need for judicial determination. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 526, p. 511.) In any event, the general rule of dismissal when the issue is moot is subject to a practical limitation when mootness cannot be determined without an examination of the record. (Witkin, *supra,* § 517, pp. 499-500.) As we perceive that the constitutional claim, if it had merit, would involve an issue of continuing public interest, we are required to examine the record. Dismissal, therefore, is not appropriate.

## The Challenged Disparity in Commitment Facilities

▉ After examining the records and transcripts in this case, including the reporter's transcripts of two prior hearings and the juvenile court's findings in August of 1986, and taking judicial notice of the habeas corpus petition filed with this court on August 30, 1985, we conclude that Gwenette's equal protection argument is without merit. Although it is facially plausible that the county's failure to maintain an intermediate unlocked facility for

girls as it does for boys violates the constitutional rights of a girl placed in a locked facility as a result of this failure, the facts in this case do not place Gwenette within the affected class.

Gwenette's habeas corpus petition was supported by a declaration of the public defender stating that the City and County of San Francisco operates an unlocked ranch facility at La Honda for male wards of the juvenile court, but does not operate a similar ranch facility for female wards. As a result of this situation, the declaration concludes that girls are placed in the locked facility in Contra Costa. Thus, an essential element of Gwenette's claim is a showing that but for the absence of an unlocked girl's facility, she would not have been placed in the locked facility in Contra Costa County.

Without citation of authority, Gwenette argues that had she been a boy, "she most likely would have been placed at Log Cabin Ranch." She argues that she maintained telephone contact with the group home to which she was previously committed after she ran away and had not actually had a group home experience because she left so quickly.

█ We are required to uphold a discretionary decision of the juvenile court whenever it is supported by substantial evidence. (*In re Jose P.* (1980) 101 Cal.App.3d 52, 58 [161 Cal.Rptr. 400].) █ The Juvenile Court Law (§ 200 et seq.) provides the court with a broad range of alternative dispositions for wards of the juvenile court (§ 727 et seq.; *In re Aline D.* (1975) 14 Cal.3d 557, 563 [121 Cal.Rptr. 816, 536 P.2d 65]). The statutory scheme " 'contemplates a progressively restrictive and punitive series of disposition orders . . . namely . . . placement in a local treatment facility and, as a last resort, Youth Authority placement.' " (*Id.,* at p. 564, quoting from the Court of Appeal decision in the same case.)

This case does not involve a failure to evaluate less restrictive placement alternatives. (See, e.g., *In re Aline D., supra,* 14 Cal.3d at p. 557.) It involves a choice between a locked and an unlocked local facility for a minor who had been previously placed in an unlocked environment without success. The probation officer's report cited Gwenette's reluctance to stay with her mother, her truancy from school, her mother's wish that she be placed in a locked facility, Gwenette's refusal to stay at her aunt's home in Ukiah, her runaway from the group home, and the more serious nature of her most recent offense, which bordered on robbery, as factors to be weighed in favor of placement at the Girl's Center.

The court's attention was also directed to Gwenette's previous expression of unwillingness to go to another group home placement. The court stated that Gwenette had not done well in the previous placements, and that the

incident of theft from the sportswear store constituted an "acceleration" of her criminal action as it involved the intimidation of the store clerk. Citing her refusal to stay with her mother and at the group home, the court concluded that the best alternative to assist Gwenette in establishing discipline in her life was commitment to the Contra Costa County facility.

 The record clearly discloses that the purported lack of an unlocked facility for girls was never a factor in the court's decision. Substantial evidence supports the juvenile court's conclusion that Gwenette was not an appropriate candidate for *any* unlocked environment. Gwenette was unable to show that her placement was a result of the lack of a less restrictive dispositional alternative for girls. As she is not a member of the class allegedly discriminated against, and has not been injured by the challenged practice, she has no standing to attack the purported discrimination. (*Estate of Horman* (1971) 5 Cal.3d 62, 77-78 [95 Cal.Rptr. 433, 485 P.2d 785], cert. den. *sub nom. Gumen et al.* v. *California* (1972) 404 U.S. 1015 [30 L.Ed.2d 662, 92 S.Ct. 672] ["To challenge the constitutionality of a statute on the ground that it is discriminatory, the party complaining must show that he is a party aggrieved or a member of the class discriminated against. (Citations.)"]; see also 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, §§ 44, 48, pp. 3282-3283, 3286.)

The order of the juvenile court is affirmed.

Newsom, J., and Holmdahl, J., concurred.