[Civ. No. 21108. Third Dist. Nov. 2, 1982.]

In re JESSE F., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JESSE F., Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Eric J. Coffill, Deputy State Public Defender, and Joan Martin, Acting Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Karen Ziskind, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FORD, J.*—**Jesse F. appeals from an order of the San Joaquin County Juvenile Court committing him to the California Youth Authority (CYA) and fixing his maximum period of confinement at 14 years. The order came after the Los Angeles County Juvenile Court sustained a petition (Welf. & Inst. Code, § 602) charging him with five counts: count I, attempted robbery (Pen. Code, §§ 211, 213) while personally armed with a knife (Pen. Code, § 12022.3) [sic]; count II, assault with a deadly weapon (Pen. Code, § 245, subd. (a)) while personally armed with a knife (Pen. Code, § 12022.3) [sic]; count III, robbery (Pen. Code, § 211) while personally armed with a bat and knife (Pen. Code, § 12022.3) [sic], with infliction of great bodily injury (Pen. Code, § 12022.7); count IV, assault with a deadly weapon (Pen. Code, § 245, subd (a)) while personally armed with a bat and knife (Pen. Code, § 12022.3) [sic], with great bodily injury (Pen. Code, § 12022.7); count V, attempted murder (Pen. Code, §§ 664, 187) with use of a bat and knife. (Pen. Code, § 12022, subd. (b).)[1]

---

*Assigned by the Chairperson of the Judicial Council.

[1]Jesse contends no enhancement under section 12022, subdivision (b) was pled or proved. The clerk's transcript shows an enhancement for use of a bat and knife was indeed pled; further, the facts show there is sufficient evidence to support an enhancement for use of a knife.

The two significant issues on appeal are (1) whether the juvenile court must state reasons for imposing consecutive terms when calculating a minor's maximum term of confinement, and (2) whether the robbery in count III and attempted murder in count V are an indivisible transaction, so that one must be stayed under Penal Code section 654. We answer both questions in the negative.[2]

*Counts I and II*

On May 15, 1981, Lawrence L. was living at the Boy's Optimist Home in Los Angeles. During the night Jesse entered Lawrence's room and began to go through a cupboard containing his belongings. Lawrence jumped out of bed and confronted Jesse; Jesse grabbed him, twisted his arm behind his back, and put a knife to his neck. Jesse asked Lawrence where his money was; Lawrence replied he had none. Jesse ordered Lawrence to put his head under the blanket and keep quiet or Jesse would shoot him. Jesse then left the room.

*Counts III, IV, and V*

Later that same night Jesse and two others rushed into the office of the home's night counselor, Gary Scotton. After scuffling and cutting his hand, they pulled Scotton's jacket up over his head, took his keys, and led him at knife and gunpoint out to his car in front of the home. When they arrived at the car Scotton was made to lie face down on the ground. One boy took his watch and money from him while the others searched his car. Scotton heard one of the boys say they should take him with them; at this, Scotton attempted to rise, but was told he would be killed if he tried to again. A few seconds later Scotton got up and ran. As he did he was cut across the eye and hit on the back of the head. He escaped but required five days' hospitalization.

I

We treat first the issue of consecutive terms.

■ When a minor is committed to CYA the juvenile court, under Welfare and Institutions Code section 726,[3] must specify the maximum term of physical

---

[2]Jesse and the People agree the enhancements under Penal Code section 12022.3 were erroneously charged and must be stricken, since there is no indication the minor committed any of the sex offenses enumerated in that section.

[3]Welfare and Institutions Code section 726 provides in part: "In any case in which the minor is removed from the physical custody of his parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. [¶] As used in this section and in Section 731,

confinement. When there are multiple counts, the section allows the court to impose consecutive terms for each. Here, the court imposed consecutive terms expressing the view that it was compelled by section 726 to do so.[4] Jesse and the People agree it was error to impose consecutive terms automatically. By providing, "If the court *elects* to aggregate the period of physical confinement . . . ," the statute gives the court discretion to run the terms consecutively or concurrently. (See *In re Eric J.* (1979) 25 Cal.3d 552, 536 [159 Cal.Rptr. 317, 601 P.2d 549]; *In re Robert S.* (1979) 92 Cal.App.3d 355, 363-364 [154 Cal.Rptr. 832]; *In re James A.* (1980) 101 Cal.App.3d 332, 339-340 [161 Cal.Rptr. 588]; see also 1 Cal. Juvenile Court Practice, (Cont.Ed.Bar 1981) § 9.40, p. 249.) This case must therefore be remanded to allow the court to exercise that discretion.

■ If on remand the court elects to impose consecutive terms, the question remains whether it must state its reasons for doing so. Jesse contends it must. He notes Welfare and Institutions Code section 726 provides that if the court chooses to impose consecutive terms, then the " 'maximum term of imprisonment' shall be specified *in accordance with subdivision (a) of Section 1170.1 of the Penal Code.*" (Italics added.) Penal Code section 1170.1, subdivision (a) provides that ". . . when any person is convicted of two or more felonies . . . *and a consecutive term of imprisonment is imposed under Sections 669 and 1170,* the aggregate term of imprisonment for all such convictions shall be the sum of the principal term, the subordinate term and any additional term imposed pursuant to Section 667.5 or 667.6. . . ." (Italics added.) This reference to Penal Code section 1170, Jesse contends, necessarily includes subdivision (c) of that section: "The court shall state the reasons for its sentence choice on the record at the time of sentencing. . . ." The selection of a consecutive rather than concurrent sentence is a "sentence choice" under this subdivision. (*People* v. *Walker* (1978) 83 Cal.App.3d 619, 622 [148 Cal.Rptr. 66]; *People* v. *Anjell* (1979) 100 Cal.App.3d 189, 203 [160 Cal.Rptr. 669].) Aside from this statutory argument, Jesse contends due process requires a statement of reasons.

---

'maximum term of imprisonment' means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled. [¶] *If the court elects to aggregate the period of physical confinement on multiple counts, or multiple petitions,* including previously sustained petitions adjudging the minor a ward within Section 602, *the 'maximum term of imprisonment' shall be specified in accordance with subdivision (a) of Section 1170.1 of the Penal Code.* [¶] . . . [¶] 'Physical confinement' means placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home pursuant to Section 730, or in any institution operated by the Youth Authority. . . ." (Italics added.)

[4] Addressing defense counsel, the court said: "You don't understand what I'm saying. I put down the maximum. When I say the maximum time of confinement, I have to put to inform this young man what the maximum time is. I'm not talking about what can be run concurrently, I've got to treat it like it's all running consecutive."

The People respond that the Legislature did not intend to have Penal Code section 1170, subdivision (c) apply in the juvenile context. Observing that section 1170.1, subdivision (a) applies when "a consecutive term of imprisonment is *imposed under Sections 669 and 1170 . . .*" (italics added), they argue that since Jesse is "confined" under Welfare and Institutions Code section 726—not "sentenced" to consecutive terms "under" section 1170—section 1170, subdivision (c) cannot come into play. They contend the reference in Welfare and Institutions Code section 726 to section 1170.1, subdivision (a) is merely a direction to use that subdivision's method of calculating the aggregate term.

The People also urge that to require reasons here is contrary to the language and purpose of the juvenile statutory scheme. They note that under Welfare and Institutions Code section 726 the juvenile court is required to impose the maximum principal term for felonies, without the need to give reasons. They refer us to *In re John H.* (1978) 21 Cal.3d 18 [145 Cal.Rptr. 357, 577 P.2d 177], which holds that a juvenile court is required neither under due process, statute, nor our Supreme Court's supervisory authority to give reasons for committing a minor to CYA. They point out that under the Penal Code the purpose of punishment is served by uniform sentences tailored to the seriousness of the offense, and that uniformity is promoted by requiring reasons. In contrast, since the purpose behind section 726 is rehabilitation, not uniform punishment, a juvenile court judge sets only an outer limit for confinement, leaving it to CYA to fix the actual term according to the minor's needs; a statement of reasons is therefore unnecessary.

We consider the People's position well taken. The statutory scheme is designed to determine the maximum period of imprisonment that could be imposed upon an adult. It is not designed to elicit reasons for indeterminate terms. A youthful offender is not "sentenced" but "confined." It would be meaningless to recite reasons for an indeterminate confinement, the true extent of which will be decided by the CYA.

Welfare and Institutions Code section 731 provides that "When a minor is adjudged a ward of the court on the ground that he or she is a person described by Section 602, the court may . . . commit the minor to the Department of the Youth Authority. [¶] A minor committed to the Department of the Youth Authority may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." When the court elects to commit the minor to CYA there is no requirement the reasons be stated. (*In re John H.,* *supra,* 21 Cal.3d 18.) Why should reasons be stated when the court also elects to calculate the maximum term by using consecutive terms?

The statutory language of Welfare and Institutions Code section 726 merely means that the restrictions of Penal Code section 1170.1, subdivision (a) shall be applied. Those restrictions limit each consecutive offense to one-third of the middle term and to a total of five years. Section 726 also makes Penal Code section 654 applicable to juvenile court commitments. (*In re Eugene R.* (1980) 107 Cal.App.3d 605, 619, fn. 9 [166 Cal.Rptr. 219].) In short, it refers to a statutory method of calculation. As the Supreme Court noted in *In re Ricky H.* (1981) 30 Cal.3d 176 [178 Cal.Rptr. 324, 636 P.2d 13], "If multiple offenses are involved, the juvenile court may aggregate the terms by using the formula for calculation of consecutive terms 'in accordance with subdivision (a) of Section 1170.1 of the Penal Code.' (§ 726, 4th par.)" (*Id.*, at p. 187, fn. 11.)

It is difficult to understand why a commitment to CYA is not a sentence choice requiring a statement of reasons and yet a consecutive calculation should be. In our view *In re Eugene R., supra,* 107 Cal.App.3d 605, was decided correctly and should be followed. There the court stated: "Finally, Eugene's notion the juvenile court judge should give his reasons for electing to aggregate the terms of the minor's previously sustained offenses is without statutory or decisional support. Since a juvenile court judge is not required to make and enter express findings explaining the reasons in favor of his decision to commit a minor to CYA, we can see no reason why he is required to do so here. (See *In re John H., supra,* 21 Cal.3d at pp. 26-27.) Indeed, the juvenile court's fixing of a term is not determinative, as '[i]t is for the Youth Authority, after observation of a minor committed to it, to fix the actual term of his incarceration. That determination, while it cannot exceed the term fixed by the juvenile court, may—and in many cases will—result in fixing an actual term at less than the maximum set forth in the 726 order.' (*In re Edward B.* (1979) 94 Cal.App.3d 362, 365 [156 Cal.Rptr. 405].)" (*Id.*, at p. 620.)

## II

■ Jesse next contends that Penal Code section 654 requires a stay of the terms imposed for counts III and IV.

Penal Code section 654 provides in part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ." The section applies to juvenile court proceedings. (*In re Michael B.* (1980) 28 Cal.3d 548, 556, fn. 3 [169 Cal.Rptr. 723, 620 P.2d 173].) It "applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective,

the defendant may be punished for any one of such offenses but not for more than one. . . ." (*People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63, 3 A.L.R.4th 339].)

Thus, for example, if an assault is committed as the means of perpetrating a robbery, section 654 requires the sentence for the assault to be stayed. (*People* v. *Ridley* (1965) 63 Cal.2d 671, 678 [47 Cal.Rptr. 796, 408 P.2d 124]; *People* v. *Medina* (1972) 26 Cal.App.3d 809, 824 [103 Cal.Rptr. 337]; *People* v. *Allen* (1963) 220 Cal.App.2d 796, 799 [34 Cal.Rptr. 106].) So it is with the assault in count II. This clearly came during the robbery in count I and was perpetrated to effect it, as the People concede.

The case is different with counts III, IV, and V. Jesse contends the robbery of Scotton in count III and the attempted murder in count V are one indivisible transaction. We disagree. When there is an assault *after* the fruits of the robbery have been obtained, and the assault is committed with an intent other than to effectuate the robbery, it is separately punishable. (*People* v. *Massie* (1967) 66 Cal.2d 899, 908 [59 Cal.Rptr. 733, 428 P.2d 869]; *In re Chapman* (1954) 43 Cal.2d 385, 391 [273 P.2d 817]; *People* v. *Williamson* (1979) 90 Cal.App.3d 164, 172 [153 Cal.Rptr. 48]; *People* v. *Birdwell* (1967) 253 Cal.App.2d 621, 631-633 [61 Cal.Rptr. 536].) In *Chapman,* for example, the victim surrendered his wallet during a holdup, then started to flee; the robber tackled him and hit him over the head with a gun. The court upheld punishment for both robbery and assault. (43 Cal.2d p. 389.)

The same reasoning applies here. When Scotton made his escape, his assailants had already robbed him of his watch and money, and were also in control of his car keys and car. The fruits of the robbery were theirs and their escape was apparently assured. Their attempt to murder Scotton as he fled constituted a separate act not necessary to effectuate the robbery. *People* v. *Green* (1979) 95 Cal.App.3d 991 [157 Cal.Rptr. 520], on which Jesse relies, is distinguishable. There the victim's purse had yet to be taken from her when she was pushed out of her van. (P. 997.) The People were forced to concede that the defendant could not be sentenced separately for robbery, kidnaping and attempted murder, since the last two crimes were incidental to accomplishing the first. (P. 1008.)

Nor does *People* v. *Carroll* (1970) 1 Cal.3d 581 [83 Cal.Rptr. 176, 463 P.2d 400], offer Jesse help. There the court observes that the crime of robbery is not actually complete until the robber "has won his way to a place of temporary safety." (P. 585.) While this may be true, it cannot mean every act a robber commits before making his getaway is incidental to the robbery. Such a construction would render cases like *Massie* and *Chapman, supra,* meaningless.

It was therefore proper to impose separate terms for the attempted murder in count V and the robbery in count III. It does appear, however, that the term imposed for the assault in count IV must be stayed as incident either to count III or V. The People so concede.

The case is remanded to the juvenile court with the directions that it (1) exercise its discretion as to whether consecutive or concurrent terms shall be imposed, (2) strike all enhancements under Penal Code section 12022.3, and (3) stay the terms imposed under counts II and IV. The judgment is otherwise affirmed.

Carr, Acting P. J., and Sparks, J., concurred.

A petition for a rehearing was denied December 2, 1982, and the opinion was modified to read as printed above.