[No. F009942. Fifth Dist. Jan. 31, 1989.]

In re ISMAEL A., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ISMAEL A., Defendant and Appellant.

912

COUNSEL

Penny L. Schulz, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Joel Carey and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BAXTER, J.—

### INTRODUCTION

We are called upon to determine whether the juvenile court must state reasons on the record for imposing an aggregate or a consecutive commitment of a juvenile to the California Youth Authority (CYA). We conclude that it need not.

### STATEMENT OF FACTS

On December 23, 1987, a disposition hearing was conducted concerning Ismael's theft of an automobile. He was referred to the custody of the juvenile hall for 120 days. At Ismael's request, the court granted him a two-day furlough to celebrate Christmas with his family. He was warned at the hearing that if he misbehaved for any reason during the furlough, the court would consider sending him to CYA.

Shortly after he was released for this Christmas furlough, Ismael began drinking alcohol with two adult friends. The next day Ismael was arrested at Vons supermarket in Fresno when he attempted to steal two bottles of liquor.

A new juvenile petition was filed December 28, 1987. Count I alleged the petty theft at Vons. Count II alleged ineffective rehabilitation from the orders issued at the December 23, 1987, disposition hearing and a modification to commit Ismael to the CYA.

The probation officer recommended that Ismael be sent to CYA. Because he had committed crimes with different criminal objectives and multiple victims while under different wardships, the probation officer recommended

that Ismael be given consecutive commitments. The probation officer recommended maximum confinement of three years for the automobile theft plus seven months for the prior and current theft crimes.

The disposition hearing was held on January 12, 1988. The juvenile court adjudged Ismael a ward of the court and committed him to CYA for a maximum term of three years and two months.

This appeal is founded on Ismael's contention that equal protection and public policy considerations require a juvenile court to state its reasons on the record for imposing aggregate or consecutive commitments upon a minor.

## DISCUSSION

### STATEMENT OF REASONS FOR JUVENILE COMMITMENTS

■ Ismael appeals on the ground that the trial court failed to state reasons for committing him to the aggregate term for automobile theft and the theft at Vons Market and then for imposing a consecutive commitment for a prior misdemeanor burglary. ■ He acknowledges that, unlike adult criminal sentences, the juvenile court need not state its reasons for imposing aggregate and consecutive commitments. (*In re John H.* (1978) 21 Cal.3d 18, 27 [145 Cal.Rptr. 357, 577 P.2d 177]; *People* v. *Brandt* (1987) 191 Cal.App.3d 143, 147-149 [236 Cal.Rptr. 258].)

In determining how to commit a minor, the juvenile court follows the statutory scheme set forth in Welfare and Institutions Code section 726.[1] ■ The juvenile court is limited to imposing the period of maximum confinement that could be imposed for an adult for the same offense or offenses. (*In re Jesse F.* (1982) 137 Cal.App.3d 164, 168 [186 Cal.Rptr. 841].) A juvenile's claim that due process necessitated that a juvenile court state its reasons for imposing longer commitments was rejected in *In re Jesse F.* (*Id.* at pp. 169-170.) The rationale for rejecting the minor's claim there was as follows: "The People also urge that to require reasons here is contrary to the language and purpose of the juvenile statutory scheme. They note that under Welfare and Institutions Code section 726 the juvenile court is required to impose the maximum principal term for felonies, without the need to give reasons. They refer us to *In re John H.* (1978) 21 Cal.3d 18 . . ., which holds that a juvenile court is required neither under due process, statute, nor our Supreme Court's supervisory authority to give reasons for committing a minor to CYA. They point out that under the

---

[1] All statutory references are to the Welfare and Institutions Code.

Penal Code the purpose of punishment is served by uniform sentences tailored to the seriousness of the offense, and that uniformity is promoted by requiring reasons. In contrast, since the purpose behind section 726 is rehabilitation, not uniform punishment, a juvenile court judge sets only an outer limit for confinement, leaving it to CYA to fix the actual term according to the minor's needs; a statement of reasons is therefore unnecessary.

"We consider the People's position well taken. The statutory scheme is designed to determine the maximum period of imprisonment that could be imposed upon an adult. It is not designed to elicit reasons for indeterminate terms. A youthful offender is not 'sentenced' but 'confined.' It would be meaningless to recite reasons for an indeterminate confinement, the true extent of which will be decided by the CYA." (137 Cal.App.3d at p. 169.)

■ One of the primary underlying reasons for not imposing the same demands on disposition of juvenile commitments as are made on sentencing courts in adult criminal cases is that the major purpose of juvenile commitment is rehabilitation. The California Supreme Court has consistently refused to find a violation of constitutional or statutory requirements where a juvenile court fails to state its reasons for imposing a longer commitment. (*In re Ricky H.* (1981) 30 Cal.3d 176, 183-184 [178 Cal.Rptr. 324, 636 P.2d 13].)

Ismael claims, however, that the underlying rationale for committing juveniles to CYA has changed to include punishment as well as rehabilitation. Because punishment is now a stated purpose of section 202, Ismael reasons that juveniles are being treated enough like adults to warrant the same treatment during sentencing.[2] According to Ismael, anything less violates public policy and a juvenile's right to equal protection under law.

___

[2] Section 202 was repealed and reenacted with several changes. (Stats. 1984, ch. 756, § 1, p. 2726 [repealed]; Stats. 1984, ch. 756, § 2, pp. 2726-2727 [reenacted].) Section 202 currently states: "(a) The purpose of this chapter is to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public. When the minor is removed from his or her own family, it is the purpose of this chapter to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents. This chapter shall be liberally construed to carry out these purposes.

"(b) Minors under the jurisdiction of the juvenile court who are in need of protective services shall receive care, treatment and guidance consistent with their best interest and the best interest of the public. Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment and guidance which is consistent with their best interest, which holds them accountable for their behavior, and which is appropriate for their circumstances. *Such guidance may include punishment that is consistent with the rehabilitative objectives of this chapter.* Juvenile courts and other public agencies charged with enforcing, inter-

### A. *Policy underlying juvenile commitments to CYA*

If the policy underlying juvenile commitments to CYA has fundamentally changed with the amendment of section 202 to make punishment the primary consideration rather than rehabilitation, there is merit to the juvenile's contention on appeal. The rationale of the cases refusing to extend adult sentencing rules to juvenile commitments appears to be strongly rooted in the concept that juvenile commitments are made for rehabilitation and not for punishment. (*In re Aline B.* (1975) 14 Cal.3d 557, 567 [121 Cal.Rptr. 816, 536 P.2d 65].) These priorities were found in the text of former section 202, subdivision (a), which stated: "(a) The purpose of this chapter is to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in the minor's own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the state; to protect the public from criminal conduct by minors; to impose on the minor a sense of responsibility for his or her own acts; to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public; and, when the minor is removed from his or her own family, to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents. This chapter shall be liberally construed to carry out these purposes."

Some support for Ismael's contention rests in the revised provisions of section 202. Punishment is now a stated purpose under subdivision (b) of section 202. Section 202, subdivision (e) defines punishment as imposition of

---

preting and administering the Juvenile Court Law shall consider the safety and protection of the public and the best interest of the minor in all deliberations pursuant to this chapter.

"(c) It is also the purpose of this chapter to reaffirm that the duty of a parent to support and maintain a minor child continues, subject to the financial ability of the parent to pay, during any period in which the minor may be declared a ward of the court and removed from the custody of the parent.

"(d) Participants in the juvenile justice system shall hold themselves accountable for its results. They shall act in conformity with a comprehensive set of objectives established to improve system performance in a vigorous and ongoing manner.

"(e) As used in this chapter, 'punishment' means the imposition of sanctions which include the following:

"(1) Payment of a fine by the minor.

"(2) Rendering of compulsory service without compensation performed for the benefit of the community by the minor.

"(3) Limitations on the minor's liberty imposed as a condition of probation or parole.

"(4) Commitment of the minor to a local detention or treatment facility, such as a juvenile hall, camp, or ranch.

"(5) Commitment of the minor to the Department of the Youth Authority.

" 'Punishment,' for the purposes of this chapter, does not include retribution." (Italics added.)

fines, compulsory community service, limitations on a minor's liberty, commitment to local detention facilities, or commitment to CYA. These forms of punishment begin to approximate adult sentences.

If the underlying purpose of juvenile dispositions is punishment, serious consideration should be given to changing the approach appellate courts have used in juvenile cases. A requirement that juvenile courts state reasons on the record for aggregating a commitment or for making commitments consecutive is *not* an onerous burden to place on a juvenile court.

On the other hand, the policy underlying section 202 has not changed sufficiently to justify new disposition hearing procedures. Section 202 has always stated that public protection was a policy in the disposition of juvenile cases. Former section 202, subdivision (a) not only seeks to protect and guide the minor, but "to protect the public from criminal conduct by minors; . . ." Former section 202, subdivision (b) stated that: "(b) The purpose of this chapter also includes the protection of the public from the consequences of criminal activity, and to such purpose probation officers, peace officers, and juvenile courts shall take into account such protection of the public in their determinations under this chapter."

The current version of section 202, subdivision (a) seeks to "provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court . . . ." Section 202, subdivision (b) mandates that juvenile courts "consider the safety and protection of the public and the best interest of the minor in all deliberations pursuant to this chapter."

Two conclusions are apparent from a comparison of former section 202 with current section 202. First, public safety and protection has always been part of the statutory scheme. To the extent that the purpose of sending juveniles to CYA is to protect the public from a juvenile's criminal activity, there is no change between the old law and the new law. Both statutes consider the protection of the public to be a reason for sending a juvenile to CYA. Second, both former section 202 and current section 202 are designed to protect the best interests of minors. The rehabilitative goal of former section 202 was not lost with reenactment of the current section.

Also, the last sentence in current section 202 states that " '[p]unishment,' for the purposes of this chapter, does not include retribution." Retribution has always been part of the adult criminal law, even during periods when reformation of the adult criminal was an important goal of the adult penal system. (See *People* v. *Brust* (1957) 47 Cal.2d 776, 791, fn. 8 [306 P.2d 480].) Retribution, however, is still not an underlying purpose in the juvenile law

even though punishment is now an element to consider in juvenile dispositions.

One recent decision found that although current section 202 has a punitive element as part of its purpose, the underlying reasons for punishment are rehabilitation and protection of society. *In re Michael D.* (1987) 188 Cal.App.3d 1392 [234 Cal.Rptr. 103] involved a minor's challenge to a CYA commitment on the ground that commitment to CYA was not supported by the facts of his record. (*Id.* at p. 1395.) Although the issues raised there were somewhat different from those of the instant action, the *In re Michael D.* court made the following observations concerning the underlying policies of current section 202: "A commitment to CYA had to be supported by a determination based upon substantial evidence in the record of (1) probable benefit to the minor (*In re Aline D., supra,* at p. 566; *In re John H.* (1978) 21 Cal.3d 18, 27 . . .), and (2) that a less restrictive alternative would have been ineffective or inappropriate. (*In re Ricky H.* (1981) 30 Cal.3d 176, 183 . . . .)

"In 1984, the Legislature replaced the provisions of section 202 with new language which emphasized different priorities for the juvenile justice system. (Stats. 1984, ch. 756, §§ 1, 2 pp. 2726-2727.) The new provisions recognized punishment as a rehabilitative tool. (§ 202, subd. (b).) Section 202 also shifted its emphasis from a primarily less restrictive alternative approach oriented towards the benefit of the minor to the express 'protection and safety of the public' (§ 202, subd. (a); *In re Lawanda L.* (1986) 178 Cal.App.3d 423, 433 . . ., review den.), where care, treatment, and guidance shall conform to the interests of public safety and protection. (§ 202, subd. (b).)

"Thus, it is clear that the Legislature intended to place greater emphasis on punishment for rehabilitative purposes and on a restrictive commitment as a means of protecting the public safety. This interpretation by no means loses sight of the 'rehabilitative objectives' of the Juvenile Court Law. (§ 202, subd. (b).) Because commitment to CYA cannot be based solely on retribution grounds (§ 202, subd. (e)(5)), there must continue to be evidence demonstrating (1) probable benefit to the minor and (2) that less restrictive alternatives are ineffective or inappropriate." (188 Cal.App.3d at p. 1396.)

The *In re Michael D.* court notes that punishment in section 202 is only used for rehabilitation. It further notes that the underlying purposes of current section 202 are to protect society and to rehabilitate the minor. Those were precisely the policies of former section 202.

The fundamental policies underlying section 202 have not dramatically changed. The change is more subtle than dramatic even though section 202 now proclaims a punitive purpose.

Aside from any analysis of section 202, Ismael's contentions are considerably weakened by the very commitment to CYA itself which has not changed by the amendments to section 202. Under sections 1731.5 and 1766, a trial court may only commit a minor to CYA for the maximum period of time allowed for an adult. (*People* v. *Walling* (1980) 105 Cal.App.3d 893, 896 [164 Cal.Rptr. 681].)

Under section 1731.5, however, the duration of a minor's stay in CYA is determined solely by the Director of the Youth Authority. (See *People* v. *Crenshaw* (1986) 177 Cal.App.3d 259, 266 [222 Cal.Rptr. 824].) Whatever term of commitment to CYA is chosen by the juvenile court, the minor's ultimate period of commitment is regulated by the state juvenile authorities, not by the juvenile court itself. ■ The juvenile court merely states the outer maximum term of commitment. A juvenile court is not authorized to substitute its judgment for that of the Youth Authority. (*In re James A.* (1980) 101 Cal.App.3d 332, 338-339 [161 Cal.Rptr. 588].)

■ The juvenile court's disposition setting a maximum term may or may not have a bearing upon Ismael's ultimate term of confinement. As a practical matter it appears that it does not. The Youth Authority has unfettered discretion to determine the minor's length of commitment notwithstanding the juvenile court's disposition.[3]

Notwithstanding any punitive purposes in section 202, the Youth Authority controls the actual term of commitment, not the juvenile court. The minor committed to the Youth Authority is treated very differently from an adult sent to state prison. The rehabilitative purpose of CYA is far different from the primarily punitive goals of the state prison sentences for adults.

These rehabilitative goals were clearly the primary reason for the juvenile court's disposition. The trial court made the following observations as its basis for the disposition of Ismael's case: "[THE COURT:] All right. I've read the letter [from] Ismael. Let me state that I do propose to commit you to the California Youth Authority, but I don't think you ought to view it as such a grim, somehow termination of your plan. You can still do all these things.

"I'm hoping you're going to get an education. Here you're 16 years and five months, I'm sending you there because I want you to get an education. I think you're bright young man with potential. I want you to develop some

---

[3] The CYA categorizes offenses into seven categories by degree of seriousness. Ismael's burglary offense and automobile theft fall into category six. Offenders guilty of category six offenses are entitled to consideration for parole after no more than one year. (See Cal. Code Regs., tit. 15, §§ 4950-4957; *In re Jesse F., supra,* 137 Cal.App.3d 164, 169.)

controls in your life style. I want you to perhaps develop some vocational training and certainly, hopefully you'll obtain some counseling for your substance abuse problem.

"All of those matters or needs are clearly evident by the information obtained in the social study report, but I've jumped ahead a little bit. First off let me ask are there any errors or any corrections or additions to this report?"

The juvenile court's primary consideration was Ismael's welfare. Its primary purpose in committing Ismael to CYA was not to punish him but to give him a more structured environment so that he could develop more self-control. Given the nonpunitive purpose in the juvenile court's disposition of Ismael's case, Ismael's argument that he should be treated more like an adult with the juvenile court stating its reasons on the record for a longer commitment becomes a weaker argument. The policies underlying section 202 have not changed substantially enough to justify a change in the disposition of juvenile commitments. The fact that the term of the minor's sentence is ultimately determined by CYA and not the juvenile court further undermines Ismael's argument that the newly added punitive element of section 202 necessitates that a juvenile court state its reasons on the record for a longer commitment.

B. *Equal protection*

The underlying policies of section 202 have not changed enough to warrant a change in the juvenile court's disposition of these cases. **(5)** Ismael's equal protection argument must be premised on a claim that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. Juvenile wards committed to CYA and adults committed to criminal courts are not similarly situated. (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549]; *In re Steven R.* (1982) 131 Cal.App.3d 95, 98 [182 Cal.Rptr. 384].)

Although the court in *In re Eric J.* recognized that juvenile dispositions in 1979 did not include punishment, the fact that punishment is included as an element of section 202 does not alter the other compelling policies of rehabilitation and treatment. (See 25 Cal.3d at pp. 531-532.) These policies are different in juvenile and adult cases. As discussed in detail above, juvenile dispositions after the legislative modifications to section 202 are not substantially different than they were under the original statute. The policies underlying section 202 and the unequal treatment in the dispositions of juvenile and adult commitments have not changed substantially enough since *In re Eric J.* was decided to rise to the level of a true disparity between

two similarly situated groups. Ismael has failed to show how a violation of equal protection has occurred in this case.

The judgment is affirmed.

Hamlin, Acting P. J., and Stone (W. A.), J., concurred.

Appellant's petition for review by the Supreme Court was denied April 25, 1989. Mosk, J., was of the opinion that the petition should be granted.