Filed 2/28/14  P. v. Parsons CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRIAN CHARLES PARSONS,<br><br>        Defendant and Appellant. | A137501<br><br>(Contra Costa County<br> Super. Ct. No. 5-100801-0) |

Defendant Brian Charles Parsons was charged in an information with multiple counts and related sentence enhancements arising from several incidents including his attempt to steal two vehicles and his successful theft of a third vehicle.  Before trial, defendant pleaded no contest to resisting arrest (Pen. Code, § 69[1]) (counts seven, eight, eleven, and twelve) and misdemeanor battery (§§ 242, 243, subd. (a)) (count ten).  After a jury trial, defendant was convicted of mayhem (§ 203) (count one – victim Shannon Biggs); carjacking (§ 215, subd. (a)) (count two -victim Shannon Biggs) with a related great-bodily-injury enhancement (§ 12022.7, subd. (a)); carjacking (§ 215, subd. (a)) (count three-victim Brian Liang); assault with a deadly weapon (car) (§ 245, subd. (a)(1)) (count four- victim Shannon Biggs) with a related great-bodily-injury enhancement (§§ 12022.7, subd. (a)); assault with a deadly weapon (car) (§ 245, subd. (a)(1)) (count five-victim Brian Liang); second-degree vehicle burglary (§§ 459, 460, subd. (b)) (count six – victim John Jones); and attempt to unlawfully drive or take a vehicle (§ 664; Veh.

_____

[1]        All further unspecified statutory references are to the Penal Code.

1

Code, § 10851, subd. (a)) (count nine –victim Joshua Schultz). The jurors reported a deadlock resulting in a mistrial relating to great-bodily-injury enhancements as to counts three and five. At a bench trial, the court found true allegations that defendant had sustained a prior strike conviction and was not eligible for probation having been on parole for a felony conviction at the time of the current offenses and having sustained two prior felony convictions (§§ 667, subds. (a)(1), (b) – (i), 1170.12, 1203, subd. (e)(4), 1203.085, subd. (b)).

The trial court sentenced defendant to an aggregate term of 26 years, consisting of consecutive terms of 13 years for count two, three years and four months for count three, one year and four months for count six, one year and four months for count seven, one year and four months for count eleven, eight months for count nine, and five years for the prior strike conviction enhancement. The court also imposed concurrent terms of four years for count one, three years for count four, three years for count five, two years for count eight, two years for count twelve, and 90 days in county jail with credit for time served for count ten. The court imposed but stayed a sentence of four years on the related great-bodily-injury enhancement for count four.

On appeal defendant's sole argument is that the trial court erred by failing to stay the sentences imposed on the mayhem (count one) and the assault (counts four and five) convictions, pursuant to section 654. We conclude defendant's contention is without merit, and accordingly, we affirm.

## FACTS[2]

At the jury trial held in October 2012, Shannon Biggs testified that on September 5, 2009, she and her husband Brian Liang, landed at an airport having flown there in their privately-owned plane. Once on the ground, Liang and Biggs were given one of the airfield's crew cars, a Toyota Camry, to use during their stay in the area. Liang loaded luggage into the car and parked it in the airfield's parking lot while Biggs took care of the plane on the airstrip. Liang then walked and met Biggs on the airstrip

---

[2] We set forth only those facts necessary to resolve the sentencing issue raised on this appeal.

and they both walked back to the car in the parking lot. Biggs went to the passenger side of the car, retrieved some tip money for the crew, and walked back through the parking lot toward the airstrip, leaving Liang at the car in the parking lot. Without warning, Biggs heard her husband cry out. She turned and saw defendant holding Liang in "a fireman's hold." Defendant dragged Liang away from the car and threw him to the ground in the parking lot. When Liang attempted to get up, defendant lifted Liang over defendant's head and threw him to the ground again. Liang landed on his shoulder and his wrists.

Biggs ran toward the Camry and when she arrived defendant was fully in the driver's seat. Both doors on the driver's side of the Camry were open. Biggs scratched at defendant's face and tried to grab his genitals but defendant had no reaction. While Biggs was standing within inches of defendant, he put the car into reverse and "floored it." As the car moved in reverse, the open car door struck Biggs with such force that she flew into the air about 10 feet and landed on her back on the ground. Biggs thought the car continued to back up and pass over her. Defendant continued to back up the car and stopped about 11 feet away from Biggs. After 30 or 40 seconds Biggs pushed up onto her hands and knees. She then heard the car engine rev up and saw the driver and car aimed at both herself and Liang who was lying on the ground nearby. As defendant stepped on the gas, Biggs rolled to her left to avoid the car. The car sped between Biggs and Liang; Biggs did not see the car swerve as it drove between her and Liang. Biggs was not sure if the car actually hit her or Liang at that time.

Michael Kirk, a pilot, testified that while he was inside the airfield office, he heard a woman screaming in the parking lot. He ran to the parking lot and "[i]nitially . . . saw the rear of the car as it backed over these two people. Then as it pulled out, I was looking at the hood of the car, he spun out and came forward directly at – directly towards me. So initially my vantage point was the rear of the vehicle. After it struck the two individuals, the vehicle was coming towards me." Kirk saw "the female standing and saw the vehicle strike her, roll over the top and then drive forward back over her again." "It was a real rapid event. I vividly remember the rear of the vehicle coming up elevating

3

its tires off the ground and when I looked, I watched [the female] fall, the rear of the vehicle come up and then land back on the ground." Kirk's attention was directed at the female "because she got squarely struck by the vehicle. . . ." The female "was near the trunk and the vehicle, once it went into reverse, struck her and knocked her down." "Because [the female] was in the direct path of the tires . . . the vehicle bumped over her." Kirk was 100 percent positive the car's tires went over the woman's body and, to the best of his recollection, at the woman's midsection.

Liang and Biggs sustained severe injuries as a consequence of their encounter with defendant. Liang suffered a head wound requiring stitches and his hands were placed in splints. He wore braces on his arms for three months after the incident. At the time of trial Liang had not gotten back the flexibility in his left wrist. Biggs sustained a severe injury to her foot requiring stitches and her hip was stapled. She also had bruising around her right eye that lasted for about a month. At the time of trial Biggs's vision in her right eye was "useless for ordinary sight," and she retained only peripheral vision.

The jury convicted defendant of mayhem (count one – Biggs), carjacking with a related great-bodily-injury enhancement (count two – Biggs), carjacking (count three – Liang), assault with a deadly weapon or by force likely to cause great bodily injury with a related great-bodily-injury enhancement (count four –Biggs) and assault with a deadly weapon or by force likely to cause great bodily injury (count five – Liang).

At sentencing, the trial court chose the carjacking conviction with the related great-bodily-injury enhancement (count two – Biggs) as the principal term and imposed a sentence of 13 years on that conviction and a subordinate consecutive term of three years and four months on the second carjacking conviction (count three – Liang). The court also imposed subordinate concurrent terms on the convictions for mayhem (count one – victim Biggs) and assault with a deadly weapon or by force likely to cause great bodily injury (count four- victim Biggs and count five – victim Liang), and imposed but stayed sentence on the great-bodily-injury enhancement related to count four.

In explaining its decisions, the court stated, in pertinent part: "[¶] . . . [T]he principal term will be for Count Two, the carjacking offense where Shannon Biggs was

4

the victim. [¶] . . . I'm going to . . . choose the middle term of five years. That term will be doubled by the strike, thus, meaning the principal term, Count Two, is ten years. [¶] Added to that will be a term of three years consecutive under Penal Code section 12022.7, . . . referred to earlier as the great bodily injury enhancement of Shannon Biggs. . . . I find it somewhat troubling that such a low term is the only term available considering the catastrophic nature of the injuries. [¶] Next is Count One which is the mayhem conviction. Now, the way in which the District Attorney's Office has filed the pleadings in his matter, they have essentially alleged five counts for a period of behavior that literally took perhaps less than a minute in the parking lot of the aviation business . . . . Now, considering that I have imposed the term for the great bodily injury enhancement to Shannon Biggs, it is this Court's judgment that while a consecutive term is available to the Court, I do not believe it is barred by Penal Code section 654. I am choosing to not impose a consecutive term but instead impose a four-year term concurrent. [¶] . . . [¶] Next is Count Three which is the carjacking conviction involving Brian [Liang] [¶] . . . [¶] . . . I believe that is a separate victim and the assaultive-type behavior that took place which resulted in the vehicle being taken was a separate act from what occurred with regard to Ms. Biggs and I believe a consecutive term is appropriate and so for that count, I will impose one-third of the middle term [of] . . . five years, I will then double that term by use of the strike conviction and so the additional consecutive term for Count Three is three years, four months." In explaining its reasons for imposing concurrent terms of three years on the assault convictions (counts four and five), the court stated: "[¶] . . . "[W]ith regard to Count Four. I believe that the behavior in Count Four was directly related to the Defendant's goal of taking the motor vehicle and while it might have been a separate crime from the carjacking, I believe the Defendant's primary goal was the same and so while the People have requested that this Court impose a consecutive term for Count Four, I am going to reject that proposal and instead impose a three-year concurrent term which is the midterm. [¶] For Count Five, that is the conviction for Penal Code section 245 for Brian Liang as the victim. And, again, I already imposed a consecutive term for the carjacking of Brian Liang. I believe, again,

5

that the Defendant's primary goal when assaulting Mr. Liang, his primary goal, while it was a separate crime, was the taking of the motor vehicle and the People have requested a consecutive term . . . [but] I'm going to reject that proposal and instead impose the midterm of three years concurrently."

## DISCUSSION

Defendant argues the trial court erred in imposing concurrent terms on the mayhem (count one) and assault (counts four and five) convictions, and asks us to stay the punishment pursuant to section 654. Although the trial court did not expressly so rule, its imposition of concurrent terms on the mayhem and assault convictions was an implicit finding that section 654 did not bar separate punishments on those convictions. (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1565 ["implicit in the trial court's concurrent sentencing order is that defendant entertained separate intentions"].) "[A]lthough there appears to be little practical difference between imposing concurrent sentences, as the trial court did, and staying sentence on [three] of the convictions, as defendant urges, the law is settled that the sentences must be stayed to the extent that section 654 prohibits multiple punishment." (*People v. Jones* (2012) 54 Cal.4th 350, 353.) Nevertheless, as we now discuss, we see no reason to disturb the trial court's imposition of concurrent sentences.

Section 654, subdivision (a), reads, in pertinent part: "[A]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Because "few if any crimes . . . are the result of a single physical act, . . . '[s]ection 654 has been applied not only where there was but one "act" in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654.' " (*Neal v. State of California* (1960) 55 Cal.2d 11, 19 (*Neal*), disapproved on other grounds in *People v. Correa* (2012) 54 Cal.4th 331, 334.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than

6

one act within the meaning of section 654 depends on the intent and objective of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal, supra*, at p. 19.) "Decisions since *Neal* have limited the ['intent and objective'] rule's application in various ways.  Some [courts] have narrowly interpreted the length of time the defendant had a specific objective, and thereby found . . . [¶] . . . separate, although sometimes simultaneous, objectives under the facts." (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211-1212.)  Additionally, it has been held that if a defendant " 'harbored multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)  "The question whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination.  Its findings on this question must be upheld on appeal if there is any substantial evidence to support them." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.)

Relying solely on isolated portions of Biggs' testimony, defendant contends "[t]he uncontested evidence clearly establishes that [his] sole objection was the theft of the crew car," his acts of mayhem and assault were not "gratuitous or committed for some other independent purpose," and he did not intend to harm either Biggs or Liang "independent of achieving" his goal of stealing the car.  However, "[w]hen a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have*

7

*reached a contrary conclusion.*" (*Bowers v. Bernarnds* (1984) 150 Cal.App.3d 870, 873-874.)

Defendant's arguments are incorrectly premised on isolated portions of Biggs' testimony. The trial court was free to reject those portions of Biggs' testimony, " 'though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a cloth of truth out of selected available material.' " (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67-68.) By reconciling the testimony of Biggs and Kirk, the trial court could reasonably find that once defendant was in full possession of the car he had an opportunity to reflect on his conduct and abandon his criminal conduct but he failed to do so. Instead, he chose to expose both Liang and Biggs to new risks of harm by the manner in which he maneuvered the car to facilitate his escape from the parking lot. Thus, the trial court could conclude separate punishments for carjacking, mayhem and assault were commensurate with defendant's culpability (*Neal, supra*, 55 Cal.2d at p. 20) because his "means to achieve" the carjacking had "become so extreme they c[ould] no longer be termed 'incidental' and must be considered to express a different and more sinister goal than mere successful commission of the original crime" (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 191 (*Nguyen*)). As the court explained in *Nguyen*, Section 654 "cannot, and should not be stretched to cover gratuitous violence or other criminal facts far beyond those reasonably necessary to accomplish the original offense. Once robbers have neutralized any potential resistance by the victims, an assault or attempt to murder to facilitate a safe escape, evade prosecution, or for no reason at all, may be found by the trier of fact to have been done for an independent reason." (*Nguyen, supra*, at p. 191; see also *People v. Trotter* (1992) 7 Cal.App.4th 363, 368 [separate punishments upheld on two assault convictions where defendant fired two shots a minute apart at the victim as "each shot evinced a separate intent to do violence;" "[e]ach shot posed a separate and distinct risk to [the victim]"]; *In re Jesse F.* (1982) 137 Cal.App.3d 164, 171 [even if "the crime of robbery is not actually complete until the robber 'has won his way to a place of

8

temporary safety[,]' . . . it cannot mean every act a robber commits before making his getaway is incidental to the robbery"].)

In sum, we conclude there is no reason to disturb the trial court's imposition of separate punishments for the mayhem and assault convictions. Defendant in effect asks us to reweigh the evidence and the reasonable inferences that could be drawn therefrom and substitute our judgment for that of the trier of fact. We decline to do so. Nothing in the cases cited by defendant warrants a different result. [3]

**DISPOSITION**

The judgments are affirmed.

_____
Jenkins, J.

We concur:


_____
McGuiness, P. J.


_____
Pollak, J.

_____

[3]      Whether section 654 prohibits multiple punishment is a "separate" decision from the question of whether sentences should be concurrent or consecutive. (*People v. Deloza* (1998) 18 Cal.4th 585, 594; see Cal. Rules of Court, rule 4.424 ["Before determining whether to impose either concurrent or consecutive sentences on all counts on which the defendant was convicted, the court must determine whether the proscription in section 654 against multiple punishments for the same act or omission requires a stay of execution of the sentence imposed on some of the counts."].) In deciding whether to impose concurrent or consecutive terms, the trial court here relied on proper criteria, finding the crimes of carjacking, mayhem, and assault, which "occurred in perhaps less than a minute," and their objectives, were not "predominantly independent of each other" (Cal. Rules of Court, rule 4.425(a)(1)), and were "committed so closely in time and place as to indicate a single period of aberrant behavior" (*Id.*, rule 4.425(a)(3)). However, the trial court's comments cannot be read as an implicit finding that section 654 barred imposing separate punishments on the mayhem and assault convictions, as defendant suggests.

9