Filed 2/15/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re HUNTER W., a Person Coming Under the Juvenile Court Law. | D079942 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J237942) |
| v. | |
| HUNTER W., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Ana L. Espana, Judge. Affirmed.

Justin Behravesh, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel J. Hilton and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

In 2016, Hunter W. was charged with attempted murder (Pen. Code, § 187, subd. (a)) and assault with a deadly weapon (*id.*, § 245, subd. (a)(1)), as well as allegations that he personally used a deadly weapon under Penal Code section 1192.7, subdivision (c)(23). Shortly after, he was charged with driving without a license (Veh. Code, § 12500, subd. (a)) and driving under the influence of drugs (*id.*, § 23152, subd. (a)). After he admitted to the assault with a deadly weapon and driving under the influence charges, the juvenile court granted Hunter conditional probation. In 2018, after multiple reports of probation violations, the juvenile court revoked probation and committed Hunter to the Department of Juvenile Justice (DJJ) for the maximum term of seven years. Hunter appealed, and this court affirmed the dispositional order and issued the remittitur on August 15, 2019.

After the passage of Senate Bill No. 823, on December 2, 2021, Hunter filed a petition to modify the commitment order to the middle term of six years—the maximum confinement permitted under the new law. The District Attorney opposed the petition on the grounds that the new law does not apply to Hunter's final judgment. The juvenile court agreed with the prosecution and denied Hunter's petition. On appeal from that order, Hunter again argues that his juvenile disposition was not a final judgment and because the new law is ameliorative, he is eligible for relief. As we explain, we conclude the case is final for purposes of retroactivity of the new law, and affirm the juvenile court's order denying his petition for modification.

FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Hunter and another minor got into a fight over the purchase of cigarettes. The fight escalated and Hunter, who was 13 years old at the time, told the victim he was going to kill him. Hunter pulled out a knife, stabbed the victim three times, left the knife in the victim, and fled the scene. Two

days later, Hunter's mother brought him to the police station, where Hunter admitted to stabbing the victim because he thought the victim was going to kill him. Hunter denied making any threats during the altercation. As a result of the stabbing, the District Attorney filed a juvenile wardship petition alleging Hunter fell within the court's jurisdiction under Welfare and Institutions Code section 602.[1]

Before the petition was adjudicated, the District Attorney filed a second petition alleging Hunter had driven without a license (Veh. Code, § 12500, subd. (a)) and under the influence of drugs (*id.*, § 23152, subd. (a)). Hunter had taken his mother's car and crashed it into a tree. The car caught fire and was destroyed. Hunter told the responding officers at the scene what happened, and admitted he was under the influence of Xanax and marijuana that he obtained illegally.

At the hearings on the allegations on the two petitions, Hunter admitted to the charges of assault with a deadly weapon and driving under the influence. The court dismissed the attempted murder charge, as well as the serious felony allegation, and the charge of driving without a valid license. The court placed Hunter on probation with various terms and conditions.

Hunter did not perform well on probation, and after multiple violations, on October 11, 2018, the court revoked probation and the parties stipulated to placement in the DJJ. The court then set the maximum term of confinement at seven years. Hunter appealed the dispositional order, which we affirmed. Our remittitur issued on August 15, 2019.

---

[1]  Subsequent undesignated statutory references are to the Welfare and Institutions Code.

3

On December 2, 2021, Hunter filed a petition to set aside the dispositional order under section 779. He argued that under the amendments to section 731 made by Senate Bill No. 823, the maximum term of confinement for his offenses was the midterm of six years. The District Attorney opposed the petition, asserting the new law could not be applied to cases already final at the time it took effect and that Hunter's case became final after this court issued its remittitur in 2019. After a hearing, the juvenile court denied Hunter's petition. It found that under Hunter's interpretation of the law, no juvenile case would ever be final and that if the Legislature had intended such an extreme result, it would have said so. Hunter timely appealed from the court's denial order.

## DISCUSSION

Hunter argues that because the juvenile court retains jurisdiction to change, modify, or set aside the minor's order of commitment, his case is not yet final. Thus, he argues, under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), he is entitled to the ameliorative changes made by Senate Bill No. 823. The Attorney General responds that Hunter's interpretation of what constitutes a final judgment for purposes of retroactivity under *Estrada* is incorrect. As we shall explain, we agree with the juvenile court and the Attorney General that for purposes of the rule announced in *Estrada*, Hunter's case became final at the time his right to appeal from the original dispositional order was exhausted.

### I

On September 30, 2020, the Governor signed Senate Bill No. 823, which was enacted to overhaul the juvenile justice system. Among other changes, the bill amended former section 731, subdivision (c), to limit the maximum term of confinement of a minor to the DJJ to "the middle term of

4

imprisonment that could be imposed upon an adult convicted of the same offense." (Stats. 2020, ch. 337, § 28, eff. Sept. 30, 2020.) This change became operative on September 30, 2020, and inoperative on July 1, 2021. (See former § 731, subd. (d) ["This section shall become inoperative on July 1, 2021, and, as of January 1, 2022, is repealed"].) As of July 1, 2021, the legislation applied the same limitation on the maximum confinement period to all juvenile commitments by amending section 730, subdivision (a)(2), to provide: "A court shall not commit a juvenile to any juvenile facility for a period that exceeds the middle term of imprisonment that could be imposed upon an adult convicted of the same offense." (Stats. 2020, ch. 337, § 27.)

Another bill, Senate Bill No. 92 (2021-2022 Reg. Sess.), added new section 731 and became effective upon its signing by the Governor on May 14, 2021. (Stats. 2021, ch. 18, § 8.) This legislation maintained the definition of maximum confinement time instituted by Senate Bill No. 823 and became operative on July 1, 2021. Current section 731, subdivision (b), in relevant part, provides: "The court shall not commit a ward to the Division of Juvenile Justice for a period that exceeds the middle term of imprisonment that could

be imposed upon an adult convicted of the same offense."[2] (Stats. 2021, ch. 18, § 8.)

## II

We review questions of retroactivity and other matters involving statutory interpretation de novo. (*In re David C.* (2020) 53 Cal.App.5th 514, 519.)

"Section 3 of the Penal Code instructs that no part of that code applies retroactively, which we have taken to mean that new criminal laws do not govern prosecutions initiated before the law went into effect. (See *Estrada, supra*, 63 Cal.2d at pp. 746–748.) But [the California Supreme Court has] recognized an exception to this rule for new laws that mitigate punishment; in *Estrada*, [the court] held that such laws are presumed to apply to cases charged before the law's enactment but not yet final. (*Id.* at p. 745.) Absent evidence to the contrary, [California courts] presume that when the Legislature 'amends a statute so as to lessen the punishment,' it 'must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.' (*Ibid.*) Because the Legislature has 'determined that its former

---

[2] The provision states in full: "(b) A ward committed to the Division of Juvenile Justice shall not be confined in excess of the term of confinement set by the committing court. The court shall set a maximum term based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation. The court shall not commit a ward to the Division of Juvenile Justice for a period that exceeds the middle term of imprisonment that could be imposed upon an adult convicted of the same offense. This subdivision does not limit the power of the Board of Juvenile Hearings to discharge a ward committed to the Division of Juvenile Justice pursuant to Sections 1719 and 1769. Upon discharge, the committing court may retain jurisdiction of the ward pursuant to Section 607.1 and establish the conditions of supervision pursuant to subdivision (b) of Section 1766."

penalty was too severe,' the only reason to apply that penalty in pending cases would be 'a desire for vengeance,' a motivation we decline to attribute to our lawmakers." (*People v. Padilla* (2022) 13 Cal.5th 152, 160 (*Padilla*).)

"[T]he range of judgments affected by *Estrada* is delimited by constitutional constraints …." (*Padilla, supra*, 13 Cal.5th at p. 160.) As *Estrada* explained, "a law lessening punishment is understood to apply 'to every case to which it constitutionally could apply.' (*Estrada, supra*, 63 Cal.2d at p. 745.)" (*Padilla,* at pp. 160–161.) "[A]ny restrictions on [the Legislature's power to intervene in judicial decisionmaking] attach at 'the conclusion of a criminal proceeding as a whole'— i.e., when ' "the last word of the judicial department with regard to a particular case or controversy" ' has issued." (*Id.* at p. 161.) Under principles of separation of powers, "when the judicial department has concluded its judgment in a particular case, 'Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was.' [Citation.] Congress may not direct 'findings or results under old law,' but it may 'compel[ ] changes in law.' [Citation.] Consistent with this view, [the California Supreme Court has] approved laws that alter indisputably final cases when they create new rules or procedures by which a defendant may seek relief." (*Ibid.*)

Thus, under the rule of retroactivity announced in *Estrada*, we presume, absent evidence to the contrary, that statutes that reduce punishment for criminal conduct apply retroactively to all defendants whose sentences are not final on the statute's operative date. (See *People v. Frahs* (2020) 9 Cal.5th 618, 624–626; *People v. Brown* (2012) 54 Cal.4th 314, 323.) Here, both parties agree that the statutory amendments at issue are an ameliorative change in the criminal law that reduces the maximum time of

7

confinement for minors.  We agree.  Further, as the Attorney General also concedes, because the Legislature did not express any intent to limit the retroactive application of the change, it applies to all affected cases that are not yet final.  (*People v. Babylon* (1985) 39 Cal.3d 719, 722 ["absent a saving clause, a criminal defendant is entitled to the benefit of a change in the law during the pendency of his appeal"].)

### III

At issue in this case is what constitutes finality for purposes of a juvenile delinquency case.  In an adult criminal proceeding, finality occurs for purposes of the *Estrada* rule "when the availability of an appeal and the time for filing a petition for certiorari with the United States Supreme Court have expired."  (*People v. Buycks* (2018) 5 Cal.5th 857, 876, fn. 5; *People v. McKenzie* (2020) 9 Cal.5th 40, 46 ["an amendatory statute applies in ' "any [criminal] *proceeding* [that], at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it" ' "]; see also *Clay v. United States* (2003) 537 U.S. 522, 527 [recognizing that "[f]inality is variously defined," but for purposes of post-conviction relief, "[f]inality attaches when this court affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires"].)  Thus, a criminal case is considered final "when 'the criminal proceeding as a whole' has ended [citation] and 'the courts can no longer provide a remedy to a defendant on *direct review.*' " (*Padilla, supra*, 13 Cal.5th at p. 161, italics added.)

Section 800 governs appealability for purposes of juvenile matters.  It states, in relevant part, "A judgment in a proceeding under Section 601 or 602 may be appealed from, by the minor, in the same manner as any final judgment, and any subsequent order may be appealed from, by the minor, as

8

from an order after judgment." (§ 800, subd. (a).) "The juvenile court's jurisdictional findings are not immediately appealable," rather the appeal in a delinquency matter "is taken from the order made after the disposition hearing. (*In re James J.* (1986) 187 Cal.App.3d 1339[, 1343].) The minor may also appeal any subsequent order in such proceedings 'as from an order after judgment.' " (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1138.)

The jurisdictional order determines whether the minor is a person "described by Section 300, 601, or 602," providing the juvenile court with jurisdiction over dependency or delinquency matters. (§ 702.) "The jurisdictional order is in the nature of an intermediate order[,]" and is not appealable. (*In re James J., supra*, 187 Cal.App.3d at p. 1342.) It is analogous to a conviction in a criminal matter, "which is appealable not at the time rendered, but after sentencing." (*Ibid.*) In contrast to the jurisdictional order, "[t]he dispositional order is the final step in proceedings under section 602" and is appealable. (*Ibid.*)

"An appeal in a juvenile case must generally be filed 'within 60 days after the rendition of the judgment or the making of the order being appealed.' (Cal. Rules of Court, rule 8.406(a)(1) & former rule 8.400(d).)" (*In re Shaun R., supra*, 188 Cal.App.4th at p. 1138.) " 'In general, an appealable order that is not appealed becomes final and binding and may not subsequently be attacked on an appeal from a later appealable order or judgment.' " (*Ibid.*) Thus, once the time to file an appeal from the dispositional order has lapsed, the matter can no longer be challenged on direct review. In this way, the dispositional order in a juvenile delinquency case is no different from the judgment of conviction in a criminal case. For this reason, we agree with the juvenile court and the Attorney General that once direct review of the dispositional order is exhausted, the matter is final

9

for purposes of the *Estrada* retroactivity analysis. (See *In re David C., supra*, 53 Cal.App.5th at p. 520 [holding minor's case was final after time to appeal dispositional order lapsed for purposes of retroactive application of Senate Bill No. 439, which eliminated the jurisdiction of juvenile courts over minors under age 12 in most delinquency cases].)

In Hunter's case, the dispositional order setting the maximum term of his commitment at seven years became final when he failed to seek additional review after this court affirmed the judgment in 2019. (See *In re Pine* (1977) 66 Cal.App.3d 593, 595 ["The finality of a judgment [occurs at the] point at which the courts can no longer provide a remedy on direct review."].) Because that dispositional decision was final before the changes to section 731 became effective in 2020, the changes do not apply retroactively to Hunter's case.

Further, as the Attorney General notes, nothing in the amended statutes suggests the change was intended to apply to final judgments. New section 731 contains no reference to retroactivity or final judgments. Its language stands in contrast to other changes made by Senate Bill No. 823, which do expressly reference retroactivity. (See Stats. 2020, ch. 337, §§ 23, subd. (h) ["The amendments to this section made by Chapter 342 of the Statutes of 2012 apply retroactively."]; 24, subd. (i) [same], and 43, subd. (d) ["The amendments to subdivision (c), as that subdivision reads on July 1, 2018, made by the act adding this subdivision, apply retroactively."].)

As discussed, Hunter challenges this conclusion based on sections 775, 778, and 779, which provide the juvenile court with continued jurisdiction after the dispositional order to change, modify, or set aside the minor's order of commitment in certain circumstances. Based on these statutes, Hunter argues his case is not final for purposes of the *Estrada* rule. While it is true

10

that the juvenile court maintains jurisdiction after the dispositional order, this continued jurisdiction does not eliminate the order's finality for purposes of the retroactivity analysis.

Under section 775, "Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article." Under section 778, subdivision (a)(1), "Any parent or other person having an interest in a child who is a ward of the juvenile court or the child himself or herself through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a ward of the juvenile court for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." Finally, section 779 provides that "[t]he court committing a ward to the Youth Authority may thereafter change, modify, or set aside the order of commitment."

These provisions do not alter our conclusion that Hunter's case is final for *Estrada* purposes. As an initial matter, his definition of what constitutes finality in juvenile cases conflicts with the important public policy of promoting the finality of criminal judgments. (See *In re Martinez* (2017) 3 Cal.5th 1216, 1222 [recognizing the public's interest " ' " 'in the orderly and reasonably prompt implementation of its laws' " ' " and " ' " 'interest in the finality of judgments' " ' "].) It also leads to the absurd result that juvenile matters are never final for purposes of retroactivity under *Estrada*.

Sections 775, 778, and 779 also do not, as Hunter suggests, give the juvenile court unfettered authority to modify a sentence. "Under section 775, 'the juvenile court may modify an order that contains a clerical error, [and]

11

may also reconsider the substance of a previous order the court considers to have been erroneously, inadvertently or improvidently granted. [Citations.]' (*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 116 [construing § 385]; accord, *In re G.B.* (2014) 227 Cal.App.4th 1147, 1160 [construing § 385].) Despite its apparent breadth, section 775 'does not authorize the court to make substantive changes or modifications that otherwise exceed the court's jurisdiction.' " (*In re K.W.* (2020) 54 Cal.App.5th 467, 473.)

The statute's "requirement that the judge must deem the modification 'meet and proper' is the same as requiring that the judge must find good cause. And that finding is subject to appellate review. It has been held that 'the court must have substantial reasons' for modifying a prior order under section 775; should it do so, 'the question … would be of whether or not the court had abused its discretion …." (*In re K.W., supra*, 54 Cal.App.5th at pp. 473–474.) "It follows that section 775 does not give the juvenile court the authority to reduce or modify an adjudication, in the absence of circumstances showing that the original adjudication was somehow flawed— e.g., ineffective assistance of counsel or new evidence." (*Id.* at p. 474.)

Likewise, the juvenile court's authority under sections 778 and 779 is circumscribed. These statutes do not support Hunter's position that a juvenile matter lacks finality for purposes of *Estrada* once the time to appeal the dispositional order has passed. "[S]ection 779 does not constitute authority for a juvenile court to set aside an order committing a ward to [California Youth Authority] CYA merely because the court's view of the rehabilitative progress and continuing needs of the ward differ from CYA determinations on such matters arrived at in accordance with law. The critical question is thus whether CYA acted within the discretion conferred upon it in rejecting [a minor's] application for parole. If so, there is no basis

12

for judicial intervention by the juvenile court." (*In re Owen E.* (1979) 23 Cal.3d 398, 405.)

While these statutes do give the juvenile court continued jurisdiction over the matter, they provide no basis to override the conclusion that *Estrada* retroactivity ends once the dispositional order is " 'final and binding and may not subsequently be attacked on an appeal from a later appealable order or judgment.' " (*In re Shaun R., supra*, 188 Cal.App.4th at p. 1138.) While the minor under section 775, or another interested party under section 778, can seek relief from the juvenile court under these provisions, they provide no basis to directly challenge the dispositional order. Instead, they allow for a statutory collateral attack to correct certain errors or to address changed circumstances. These statutes do not alter our conclusion that once *direct*

review of delinquent minor's disposition is over, the matter is final for purposes of the *Estrada* rule.[3]

Accordingly, because section 731—as amended by Senate Bill Nos. 823 and 92—does not suggest the Legislature intended to modify terms of confinement that were adjudicated and made final before the amendments

---

[3] The Attorney General notes that another provision added by Senate Bill No. 92, section 779.5, also does not compel a different result. Hunter does not rely on this provision, but in response to the Attorney General's briefing asserts that the law "only supports the argument that the juvenile court's continuing jurisdiction renders the minor's case here not final for purposes of *Estrada* retroactivity." Section 779.5 gives the juvenile court the ability to modify an order of confinement committing a juvenile ward to a secure treatment facility as provided for under section 875. (§ 779.5.) Similar to the statutory procedures for modification contained in sections 775, 778, and 779, under section 779.5, the juvenile court may change a commitment under section 875 only "upon a showing of good cause that the county or the commitment facility has failed, or is unable to, provide the ward with treatment, programming, and education that are consistent with the individual rehabilitation plan described in subdivision (d) of Section 875, that the conditions under which the ward is confined are harmful to the ward, or that the juvenile justice goals of rehabilitation and community safety are no longer served by continued confinement of the ward in a secure youth treatment facility." (*Ibid.*) Like the other statutes on which Hunter relies, this new provision does not disrupt the finality of the dispositional order for purposes of retroactivity under *Estrada*.

became effective, Hunter is not entitled to modification of the commitment order.[4]

DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


BUCHANAN, J.

---

[4] In his reply brief, Hunter also argues that the public policy of leniency and rehabilitation in juvenile matters supports a broader application of the *Estrada* rule.  It is certainly true that juvenile delinquency cases are not adult criminal cases, and that the central purpose of the delinquency system is to rehabilitate minor offenders whenever possible.  (See *In re Ismael A.* (1989) 207 Cal.App.3d 911, 915 ["the major purpose of juvenile commitment is rehabilitation"].)  However, Hunter provides no explanation as to why this policy should override the principals of finality and separation of state governmental powers that lead us to conclude that juvenile cases become final after the dispositional order can no longer be challenged on direct review.